Request of the Senate
No. 94-156

## OPINION OF THE JUSTICES

### (SLAPP Suit Procedure)

May 11, 1994

The following Resolution, SR 2, requesting an opinion of the justices, was adopted by the Senate on March 10, 1994, and filed with the supreme court on March 15, 1994:

"Whereas, SB 661, which proposes to amend RSA 507 to establish a new procedure for pretrial dismissal of certain types of lawsuits, is pending before the senate; and

"Whereas, the New Hampshire senate in considering this proposed legislation is unsure and uncertain as to the constitutionality of the new procedure allowing a special motion to strike certain causes of action; and

"Whereas, a constitutional defect in the procedure for such a special motion to strike would adversely affect the fair administration of justice and might deprive citizens of the right to trial by jury; and

"Whereas, Part II, Article 74 of the New Hampshire Constitution authorizes the senate to request an opinion of the justices of the supreme court upon such important questions of law pending and awaiting consideration and action by the senate which requests the advice in the course of its duty; now, therefore, be it

"Resolved by the senate:

"That the justices of the supreme court respectfully give their opinion on the following questions of law:

1. Is the procedure for consideration of a special motion to strike, as proposed in SB 661, permitted by the provisions of the New

Hampshire Constitution, Part I, Article 20, which guarantees the right of trial by jury in civil cases?

2. Is the procedure proposed by SB 661 otherwise permitted by the New Hampshire Constitution?

"That the senate clerk send a copy of this resolution together with a copy of SB 661 to the justices of the supreme court."

The following response is respectfully returned:

*To the Honorable Senate*:

The undersigned justices of the supreme court submit the following reply to your questions of March 10, 1994. Following our receipt of your resolution, we invited interested parties to file memoranda with the court on or before April 15, 1994.

SB 661 (the bill) proposes to amend RSA chapter 507 (1983 & Supp. 1993) by inserting after section 15 a new section, 507:15-a, titled "Strategic Lawsuits Against Public Participation." The legislature's findings and purpose are set out in the bill as follows:

> "The legislature finds and declares that there has been a disturbing increase in strategic lawsuits against public participation, which are lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process."

The new section creates a defense to a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or New Hampshire Constitution in connection with a public issue . . . ." Under such circumstances, the cause of action

> "shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim. In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based. If the court determines that the plaintiff has established a probability of prevailing on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the case, and no burden

of proof or degree of proof otherwise applicable shall be affected by that determination."

Under the bill, the defendant must file the special motion to strike within sixty days of the service of the complaint unless the court, in its discretion, grants additional time. Unless the court orders otherwise, all discovery is stayed upon the filing of the motion. A hearing on the motion must be held within thirty days after service of the motion unless the docket conditions of the court require a later hearing.

The bill defines an "act in furtherance of a person's right of petition or free speech under the United States Constitution or New Hampshire Constitution in connection with a public issue" as including

> "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; or any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest."

A prevailing defendant on a special motion to strike is entitled to recover attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court may award costs and reasonable attorney's fees to a plaintiff prevailing on the motion.

Some background information is helpful. Strategic lawsuits against public participation (SLAPPs) are civil lawsuits filed against non-governmental individuals and groups, usually for having communicated with a government body, official, or the electorate, on an issue of some public interest or concern. Pring, *SLAPPs: Strategic Lawsuits Against Public Participation*, 7 PACE ENVTL. L. REV. 3, 7–8 (1989). SLAPPs are filed in response to a wide range of political activities including zoning, land use, taxation, civil liberties, environmental protection, public education, animal rights, and the accountability of professionals and public officials. *See* Note, *The Empire State SLAPPs Back: New York's Legislative Response to SLAPP Suits*, 17 VT. L. REV. 925, 927 (1993); Note, *Silencing SLAPPs: An Examination of Proposed Legislative Remedies and a "Solution" for Florida*, 20 FLA. ST. U. L. REV. 487, 489–90 (1992).

SLAPPs seek to retaliate against political opposition, attempt to prevent future opposition and intimidate political opponents, and are employed as a strategy to win an underlying economic battle, political fight, or both. Canan, *The SLAPP from a Sociological Perspective*, 7 PACE ENVTL. L. REV. 23, 30 (1989). The SLAPP plaintiff's goal is not necessarily to "win" the lawsuit, but rather to deter public participation in the democratic process by chilling debate on public and political issues. *See Westfield Partners, Ltd. v. Hogan*, 740 F. Supp. 523, 525 (N.D. Ill. 1990). This goal is realized by instituting or threatening multimillion-dollar lawsuits to intimidate citizens into silence. *See* Canan & Pring, *Studying Strategic Lawsuits Against Public Participation: Mixing Quantitative and Qualitative Approaches*, 22 LAW & SOC'Y REV. 385, 389 (1988).

Identifying SLAPPs, which typically appear as ordinary lawsuits, presents difficulties. Objective factors for identifying SLAPPs have, however, been suggested. These factors include: the defendant's activity implicates the constitutional rights of free speech and to petition for the redress of grievances; the type of legal claim is generally a claim for defamation, tortious interference with business or contract, civil conspiracy or abuse of process, constitutional or civil rights violations, or nuisance; and SLAPP filers are typically real estate developers, property owners, police officers, alleged polluters, and state or local government agencies. *See* Canan & Pring, *supra*, at 388–89.

In response to an increasing use of SLAPPs over the past decade, several States have passed legislation. *See, e.g.*, Cal. Civ. Proc. Code § 425.16 (Deering Supp. 1994); N.Y. Civ. Prac. L. & R. §§ 3211(g), 3212(h) (McKinney Supp. 1994); N.Y. Civ. Rights Law §§ 70-a, 76-a (McKinney Supp. 1994); R.I. Gen. Laws §§ 9-33-1 to 9-33-4 (Supp. 1993); Wash. Rev. Code §§ 4.24.510, 4.24.520 (1992). Anti-SLAPP legislation has been proposed in other States, including Connecticut, Florida, New Jersey, Maryland, Texas, and Virginia. The bill at issue before us was modeled after the California statute.

Your first question asks whether the procedure for consideration of a special motion to strike, as proposed in the bill, is permitted by the provisions of part I, article 20 of the New Hampshire Constitution. The constitution provides:

> "In all controversies concerning property, and in all suits between 2 or more persons except those in which another practice is and has been customary and except those in which the value in controversy does not exceed $1,500 and

no title to real estate is involved, the parties have a right to a trial by jury. This method of procedure shall be held sacred unless, in cases arising on the high seas and in cases relating to mariners' wages, the legislature shall think it necessary to alter it."

N.H. CONST. pt. I, art. 20. We answer in the negative.

■ The right to trial by jury extends to all cases for which the right existed when the constitution was adopted in 1784. *See State v. Morrill*, 123 N.H. 707, 712, 465 A.2d 882, 885 (1983). "[T]he right . . . is a fundamental one under our State Constitution in both the civil and the criminal contexts," *id.* at 711, 465 A.2d at 885, but does not extend to "special, statutory or summary proceedings unknown to the common law." *Hallahan v. Riley*, 94 N.H. 338, 339–40, 53 A.2d 431, 432 (1947). We assume that causes of action affected by this bill include cases wherein the right to a jury trial exists.

The bill proposes to establish a procedure whereby an action would be dismissed unless the plaintiff can show a "probability that [he or she] will prevail on the claim." The bill does not elaborate on the meaning of the term "probability," but presumably a plaintiff able to show only a "possibility" of prevailing at trial would be subject to a motion to strike. The decision-making required under the bill differs from the kind of determinations that are made on motions to dismiss or for summary judgment.

■ In considering a motion to dismiss for failure to state a claim upon which relief may be granted, the trial court assumes that all of the plaintiff's well-pleaded allegations of fact and the reasonable inferences to be drawn therefrom are true and construes those allegations and inferences in the manner most favorable to the plaintiff. *See LaBonte v. Nat'l Gypsum Co.*, 110 N.H. 314, 316, 269 A.2d 634, 636 (1970). The motion is denied if those "facts and inferences so viewed would constitute a basis for legal relief." *Flags I, Inc. v. Kennedy*, 131 N.H. 412, 414, 553 A.2d 778, 779 (1989) (quotation omitted).

■ In reviewing a motion for summary judgment, the trial court construes the pleadings, discovery, and affidavits in the light most favorable to the opponent of the motion in determining whether the moving party has met his or her burden of establishing both the absence of a dispute of any material fact and the right to judgment as a matter of law. *See* RSA 491:8-a (1983); *BankEast v. Michalenoick*, 135 N.H. 65, 66, 599 A.2d 500, 501 (1991); *PK's Landscaping, Inc. v. N.E. Telephone Co.*, 128 N.H. 753, 755, 519 A.2d 285, 286 (1986).

■ Unlike these procedures wherein the court does not resolve the merits of a disputed factual claim, the procedure in the proposed bill requires the trial court to do exactly that. In determining whether a plaintiff has met the burden of showing a probability of prevailing on the merits of his or her claim, the trial court that hears the special motion to strike is required to weigh the pleadings and affidavits on both sides and adjudicate a factual dispute. Because a plaintiff otherwise entitled to a jury trial has a right to have all factual issues resolved by the jury, *see State v. Jones*, 125 N.H. 490, 494, 484 A.2d 1070, 1073 (1984), the procedure in the proposed bill violates part I, article 20. *See Opinion of the Justices*, 113 N.H. 205, 214, 304 A.2d 881, 887 (1973).

The opinion expressed herein is not intended to diminish our profound concern with abuse of the judicial system by lawsuits designed to intimidate citizens and exact a price for participation in the democratic process. Participants in the legal process bear responsibility for ensuring that suits are not instituted for any improper purpose or risk sanctions. *E.g.*, RSA 507:15 (Supp. 1993); SUPER. CT. R. 59; N.H. RULES OF PROF. CONDUCT 3.1; *accord* FED. R. CIV. P. 11. Our role, however, is not to assess the efficacy of legislation proposed. The question before us is whether the legislative response itself imperils constitutional rights. *See Opinion of the Justices*, 113 N.H. at 209, 304 A.2d at 884. A solution cannot strengthen the constitutional rights of one group of citizens by infringing upon the rights of another group.

In view of our response to your first question, we deem it unnecessary to address your second question.

DAVID A. BROCK
WILLIAM F. BATCHELDER
WILLIAM R. JOHNSON
W. STEPHEN THAYER, III
SHERMAN D. HORTON, JR.

May 11, 1994

*Jeffrey R. Howard*, attorney general (*Wynn E. Arnold*, assistant attorney general, on the memorandum), filed a memorandum in support of affirmative answers to the questions presented.