[No. S095000. Aug. 29, 2002.]

LOUIS G. NAVELLIER et al., Plaintiffs and Respondents, v.
KENNETH G. SLETTEN, Defendant and Appellant.

## COUNSEL

Legal Strategies Group, Ralph C. Alldredge and William M. Quinn, Jr., for Defendant and Appellant.

Levy, Ram, Olson & Rossi, Karl Olson; Karlene W. Goller; Gray Cary Ware & Freidenrich, Edward P. Davis, Jr., James Chadwick; Thomas W. Newton; Levine Sullivan & Koch, James Grossberg; Harold Fuson; Stephen J. Burns;

Steinhart & Falconer, Roger R. Myers and Rachel E. Boehm for California Newspaper Publishers Association, Los Angeles Times, Copley Press, Inc., McClatchy Newspapers, San Jose Mercury, Freedom Communications, Inc., The Hearst Corporation, Media News Group and The Recorder as Amici Curiae on behalf of Defendant and Appellant.

Law Offices of Samuel Kornhauser and Samuel Kornhauser for Plaintiffs and Respondents.

## OPINION

**WERDEGAR, J.**—The question presented is whether this action based on the defendant's having filed counterclaims in a prior, unrelated proceeding in federal court, is one "arising from" activity protected by Code of Civil Procedure section 425.16 (section 425.16; the anti-SLAPP statute), which provides for early dismissal of certain actions known as "strategic lawsuits against public participation."[1] We conclude that this action arises from statutorily protected activity, but does not for that reason alone necessarily constitute a SLAPP or become subject to dismissal under the statute.[2]

### BACKGROUND

Louis G. Navellier (Navellier) and Navellier Management, Inc. (NMI) (plaintiffs) allege that they organized the Navellier Series Fund (Fund), an investment company. Defendant Kenneth G. Sletten was elected to serve as an independent trustee of the Fund. NMI contracted with the Fund to provide investment advice and administrative services. Some years later, Sletten and the other independent trustees terminated NMI's contract.

Thereafter, plaintiffs sued Sletten and two other independent trustees in federal district court, asserting claims under the Investment Company Act[3] and additional claims (the federal action). (See *McLachlan v. Simon* (N.D.Cal. 1998) 31 F.Supp.2d 731.) The gist of plaintiffs' federal action was that the independent trustees had breached fiduciary duties they owed to the

---

[1]The acronym SLAPP was coined by Professors Penelope Canan and George W. Pring. (See generally Canan & Pring, *Strategic Lawsuits Against Public Participation* (1988) 35 Soc. Probs. 506.)

[2]This case has two companions. (See *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*); *City of Cotati v. Cashman* (2002) 29 Cal.4th 69 [124 Cal.Rptr.2d 519, 52 P.3d 695] (*Cotati*).) We granted review in this trio of cases in order to maximize the clarity and guidance respecting application of the anti-SLAPP statute the full group of decisions may provide to bench and bar.

[3]Title 15 United States Code section 80a-35 et seq.

Fund and its shareholders in not renewing NMI's investment advisory contract, in rejecting a certain merger proposal advanced by Navellier, and in failing reasonably to evaluate the consequences these decisions might have on the shareholders. In defending, the independent trustees invoked the business judgment rule.

A few months after plaintiffs filed the federal action, Sletten concluded an agreement with Navellier and NMI regarding the conditions upon which NMI would return as investment adviser to the Fund. As part of that agreement, Sletten signed a general "Release of Claims" (Release).[4] Relying on the Release, Navellier became portfolio manager and NMI became investment advisor to the Fund.

Plaintiffs subsequently filed an amended complaint in the federal action. Sletten filed counterclaims for breach of contract, breach of the covenant of good faith and fair dealing, and contribution and equitable indemnity. (See Fed. Rules Civ.Proc., rule 13, 28 U.S.C.) Sletten's counterclaims were grounded, generally, in allegations that plaintiffs had been contractually obligated to provide him a trustees' errors and omissions insurance policy, which would have covered his defense in the federal lawsuit. According to Sletten, a policy was purchased but allowed to lapse and, as a result, he was forced to incur substantial costs to defend the federal lawsuit and to seek indemnification from the Fund.

In pretrial proceedings, the federal district court denied plaintiffs' motion to dismiss Sletten's counterclaims as failing to state a claim for relief. (Fed. Rules Civ.Proc., rule 12(b)(6), 28 U.S.C.) Subsequently, however, plaintiffs were successful in using the Release to obtain dismissal of two of the counterclaims. Relying on the Release, plaintiffs moved for summary judgment. In opposing the motion, Sletten argued the Release was unconscionable and that he had been economically "coerced" into signing it. Rejecting

---

[4] The Release provides, in part: "In consideration of the covenants, promises and agreements contained herein, [Sletten and the other trustees] (collectively the 'Trustees'), on behalf of themselves, their predecessors, successors and related entities, hereby fully release and discharge [Navellier], [NMI] and their predecessors, successors and related entities, as well as their attorneys, agents, servants, employees, representatives and assigns, from all rights, claims and causes of action of any kind or nature whatsoever, known or unknown, in law or at equity, which the Trustees have or may have against them except for any claim for contribution or indemnity in the event any third party asserts claims and recovers against the Trustees. [¶] By the release of claims, the Trustees do not admit that any claim released was or is without merit." The Release also contains a section which reads in part: "This Agreement shall act as a release of all claims released above, whether such claims are known or unknown, foreseen or unforeseen, and the parties waive the benefit of Section 1542 of the California Civil Code [preserving from general release material claims unknown to creditor at time of execution]. The parties understand and acknowledge the consequences of such specific waiver of Section 1542 of the California Civil Code . . . ."

these arguments, the court granted summary judgment for plaintiffs on Sletten's counterclaims for breach of contract and breach of the covenant of good faith and fair dealing. The court also granted in part and denied in part a defense motion for summary judgment. The case proceeded to trial on plaintiffs' surviving claims (for breach of fiduciary duty and waste of corporate assets), within which, the court ruled, Sletten's remaining counterclaim (for contribution and equitable indemnity) was "subsumed." The jury returned a defense verdict, and judgment was entered accordingly. Sletten appealed from the summary judgment order on his counterclaims and another interlocutory order respecting certain discovery sanctions; plaintiffs appealed from the final judgment.

A consolidated appeal was heard by the Ninth Circuit Court of Appeals. (*Navellier v. Sletten* (9th Cir. 2001) 262 F.3d 923.)[5] That court affirmed the judgment entered against plaintiffs by the district court. (262 F.3d at p. 949.) The appellate court also affirmed dismissal of Sletten's counterclaims, concluding "there were no material issues of fact as to the validity or enforceability of the [R]elease" (*id.* at p. 941).

A few days before plaintiffs noticed their federal appeal, they filed this state action, alleging that Sletten had committed fraud in misrepresenting his intention to be bound by the Release, so as to induce plaintiffs to incur various litigation costs in the federal action that they would not have incurred had they known Sletten's true intentions. Plaintiffs also alleged that Sletten had committed breach of contract by filing counterclaims in the federal action. Sletten thereupon filed a special motion, pursuant to section 425.16, to strike this action as a SLAPP. The trial court denied the motion, and the Court of Appeal affirmed. The Court of Appeal opined that this action falls outside the scope of the "arising from" prong of the anti-SLAPP statute because it was not brought primarily to chill the exercise of constitutional free speech or petition rights and is not an abuse of the judicial process. Sletten's petition for rehearing was denied. We granted his petition for review.

## DISCUSSION

Section 425.16 provides, inter alia, that "A cause of action against a person arising from any act of that person in furtherance of the person's right

---

[5]Plaintiffs' request that we take judicial notice of the Ninth Circuit's published opinion is denied as unnecessary. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 46, fn. 9 [77 Cal.Rptr.2d 709, 960 P.2d 513].) We also deny plaintiffs' request that we take judicial notice of Sletten's responses to certain interrogatories propounded in a case pending in the United States District Court for the District of Nevada, the relevance of which to the anti-SLAPP issues presented here is not apparent. (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [31 Cal.Rptr.2d 358, 875 P.2d 73].)

of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ." (*Id.*, subd. (e).)

As is discussed at length in the companion case, *Equilon, supra*, 29 Cal.4th 53, the Court of Appeal erred in assuming that whether this action arises from protected activity depends on whether plaintiffs subjectively intended to chill Sletten's speech or petitioning. (See *id.* at pp. 58-67.) When moving to strike a cause of action under the anti-SLAPP statute, a defendant that satisfies its initial burden of demonstrating the targeted action is one arising from protected activity faces no additional requirement of proving the plaintiff's subjective intent. (*Id.* at p. 67.) Nor need a moving defendant demonstrate that the action actually has had a chilling effect on the exercise of such rights. (See *Cotati, supra*, 29 Cal.4th at pp. 75-76.)

Section 425.16 posits instead a two-step process for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. (§ 425.16, subd. (b)(1).) "A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)" (*Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1043 [61 Cal.Rptr.2d 58]). If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim. (§ 425.16, subd. (b)(1); see generally *Equilon, supra*, 29 Cal.4th at p. 67.)

As we previously have observed, in order to establish the requisite probability of prevailing (§ 425.16, subd. (b)(1)), the plaintiff need only have " 'stated and substantiated a legally sufficient claim.' " (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123 [81 Cal.Rptr.2d 471, 969 P.2d 564] (*Briggs*), quoting *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 412 [58 Cal.Rptr.2d 875, 926 P.2d 1061] (*Rosenthal*).) "Put another way, the plaintiff 'must demonstrate

that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733], quoting *Matson v. Dvorak* (1995) 40 Cal.App.4th 539, 548 [46 Cal.Rptr.2d 880].)

Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute. We turn, then, to the question whether this action satisfies the initial statutory requirement that to constitute a SLAPP the cause of action must arise from the defendant's activity in furtherance of free speech or petitioning rights.

A. *"Arising From"*

As is discussed at length in *Cotati, supra,* 29 Cal.4th 69, another companion case, the mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. (*Id.* at pp. 76-78.) Moreover, that a cause of action arguably may have been "triggered" by protected activity does not entail that it is one arising from such. (*Id.* at p. 78.) In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity. (*Id.* at pp. 76-78; see also *Briggs, supra,* 19 Cal.4th at p. 1114; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1001 [113 Cal.Rptr.2d 625].)

In deciding whether the initial "arising from" requirement is met, a court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b).)

In their complaint, plaintiffs ground their cause of action for fraud in Sletten's alleged misrepresentations and omissions "in connection with the [R]elease" and on Sletten's "actions in signing the [R]elease." Plaintiffs allege Sletten's failure to disclose that he was secretly not in agreement with the terms of the Release induced them to file an amended complaint in the federal action, in which action Sletten subsequently claimed "he did not release and did not intend to release his claims." Plaintiffs' cause of action for breach of contract is grounded in allegations that Sletten filed counterclaims in the federal action and that his "filing of said . . . counterclaims and assertion that the Release was invalid directly and proximately damaged Navellier and NMI . . . ."

In support of his special motion to strike, Sletten submitted the declaration of his attorney, Ralph C. Alldredge, and certain documents related to the

federal action. In opposing the motion, plaintiffs submitted the declaration of their attorney, Samuel Kornhauser, and various other documents.

Examination of the relevant documents reveals that each of Sletten's acts (or omissions) about which plaintiffs complain falls squarely within the plain language of the anti-SLAPP statute. In alleging fraud, as the dissent acknowledges, plaintiffs complain about Sletten's alleged negotiation, execution, and repudiation of the Release. According to plaintiffs, the Release limited the types of claims that Sletten was permitted to file in the federal action, preserving only claims for contribution and indemnity. When moving to dismiss Sletten's counterclaims under Federal Rules of Civil Procedure, rule 12(b)(6) (28 U.S.C.), plaintiffs relied on the Release. Sletten's negotiation and execution of the Release, therefore, involved "statement[s] or writing[s] made in connection with an issue under consideration or review by a . . . judicial body" (§ 425.16, subd. (e)(2)), i.e., the federal district court, and his arguments respecting the Release's validity were "statement[s] or writing[s] made before a . . . judicial proceeding" (*id.*, subd. (e)(1)), i.e., the federal action.

In alleging breach of contract, plaintiffs complain about Sletten's having filed counterclaims in the federal action. Sletten, plaintiffs argue, "counterclaimed for damages to recover money for the very claim he had agreed to release a year earlier" and "was sued for that act." A claim for relief filed in federal district court indisputably is a "statement or writing made before a . . . judicial proceeding" (§ 425.16, subd. (e)(1)).

The record thus establishes, contrary to the dissent, that this action is based on acts Sletten took "in furtherance of [his] right of petition or free speech under the United States or California Constitution in connection with a public issue" (§ 425.16, subd. (b)(1)), as that phrase is defined in the anti-SLAPP statute (see *id.*, subd. (e)). The constitutional right of petition encompasses " ' "the basic act of filing litigation." ' " (*Briggs, supra,* 19 Cal.4th at p. 1115.) Sletten is being sued because of the affirmative counterclaims he filed in federal court. In fact, but for the federal lawsuit and Sletten's alleged actions taken in connection with that litigation, plaintiffs' present claims would have no basis. This action therefore falls squarely within the ambit of the anti-SLAPP statute's "arising from" prong. (§ 425.16, subd. (b)(1).)[6]

Despite the foregoing, plaintiffs strenuously insist that this is "a garden variety breach of contract and fraud claim" not covered by section 425.16.

---

[6]The dissent confusedly argues that Navellier's claim is not a SLAPP for the same reasons that the claim at issue in the companion case, *Cotati, supra,* 29 Cal.4th 69, is not a SLAPP (dis. opn., *post,* at pp. 97-100), but there is no analogy. To the extent Navellier's fraud claim in this action "arose . . . from the alleged deception that occurred in July 1997, when Sletten

When previously construing the statute, however, we have declined to hold "that section 425.16 does not apply to events that transpire between private individuals" (*Briggs, supra,* 19 Cal.4th at p. 1116) and have explicitly rejected the assertion " 'that the only activities qualifying for statutory protection are those which meet the lofty standard of pertaining to the heart of self-government' " (*ibid.,* quoting *Braun v. Chronicle Publishing Co., supra,* 52 Cal.App.4th at pp. 1046-1047). Plaintiffs' arguments to the contrary are not persuasive.

Plaintiffs cite *Foothills Townhome Assn. v. Christiansen* (1998) 65 Cal.App.4th 688, 696 [76 Cal.Rptr.2d 516] (*Foothills Townhome Assn.*) (homeowners association's action to collect member's unpaid dues not a SLAPP) and *Ericsson GE Mobile Communications, Inc. v. C.S.I. Telecommunications Engineers* (1996) 49 Cal.App.4th 1591, 1603 [57 Cal.Rptr.2d 491] (*Ericsson*) (competitor's action for interference with prospective economic advantage not a SLAPP) as "the only cases wherein a defendant has tried to apply the [anti-]SLAPP statute to a breach of contract or fraud case," noting the attempt failed in both cases. Plaintiffs conclude the statute "was not enacted to or intended to protect someone from being sued for breaching his/her agreement not to sue."

Plaintiffs' cited cases do not provide a basis for departing from the anti-SLAPP statute's plain language. The decision denying an anti-SLAPP motion in *Foothills Townhome Assn.* turned not on the form of the action but, rather, on the Court of Appeal's view that the defendant had "failed to meet his burden to show the lawsuit was brought to chill his First Amendment rights." (*Foothills Townhome Assn., supra,* 65 Cal.App.4th at p. 696.)[7] The court in *Ericsson* likewise was of the view that the anti-SLAPP statute

signed the release" (*id.* at p. 99), it is based on a statement or writing made in connection with issues under consideration or review by a judicial body—i.e., the issues under consideration in Navellier's federal action. (See *ibid.* [noting the release was "designed to *forestall* further litigation" including counterclaims by Sletten in "litigation pending at the time"]; see also maj. opn., *ante,* at pp. 89-90.) Such statements and writings are expressly protected by the anti-SLAPP statute. (§ 425.16, subd. (e)(2).) The claim at issue in *Cotati,* in contrast, arose from a controversy between the parties respecting mobilehome park rent control, not from any statement or writing in connection with judicial proceedings. (See *Cotati, supra,* at pp. 79-81.)

Contrary to the dissent, moreover, Navellier in this action seeks more than " 'a declaration of [Navellier]'s rights as to the controversy raised [by Navellier] in the [federal] suit' " (dis. opn., *post,* at p. 100); Navellier seeks damages for Sletten's allegedly having raised additional, independent claims in the earlier suit. Finally, Navellier's complaint, unlike the City of Cotati's complaint in *Cotati* and contrary to the dissent's assertion, expressly refers to activity protected under the anti-SLAPP statute: Sletten's negotiation and signing of the *release* and his pleading of counterclaims in the federal action.

[7]In thus disposing of an anti-SLAPP motion on the basis of the plaintiff's subjective intent, the Court of Appeal in *Foothills Townhome Assn.* erred. (*Equilon, supra,* 29 Cal.4th at pp. 58-67.)

applies only to actions brought primarily to chill First Amendment rights.[8] Although *Ericsson* also questioned the applicability of section 425.16 to "breach of contract or fraud actions where the act of the [defendant] relates to the formation or performance of contractual obligations and not . . . to the exercise of the right of free speech" (*Ericsson, supra,* 49 Cal.App.4th at pp. 1601-1602), that comment cannot be reconciled with the plain language of the anti-SLAPP statute. ▪ Nothing in the statute itself categorically excludes any particular type of action from its operation, and no court has the " 'power to rewrite the statute so as to make it conform to a presumed intention which is not expressed.' " (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) ▪ For us to adopt such a narrowing construction, moreover, would contravene the Legislature's express command that section 425.16 "shall be construed broadly." (§ 425.16, subd. (a).)[9]

The logical flaw in plaintiffs' argument is its false dichotomy between actions that target "the formation or performance of contractual obligations" and those that target "the exercise of the right of free speech." (*Ericsson, supra,* 49 Cal.App.4th at p. 1602.) A given action, or cause of action, may indeed target both. As the facts in this lawsuit illustrate, conduct alleged to constitute breach of contract may also come within constitutionally protected speech or petitioning. The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning. Evidently, "[t]he Legislature recognized that 'all kinds of claims could achieve the objective of a SLAPP

---

[8]The Court of Appeal in *Ericsson,* like the court in *Foothills Townhome Assn.,* thus erred (*Equilon, supra,* 29 Cal.4th at pp. 58-67), as it did also in implying that the anti-SLAPP statute requires, prior to every dismissal thereunder, a finding that the conduct on which the targeted action is based was " 'in connection with a public issue' " (*Ericsson, supra,* 49 Cal.App.4th at p. 1602, italics omitted). We previously have disapproved *Ericsson* on the latter point. (*Briggs, supra,* 19 Cal.4th at p. 1123, fn. 10.)

[9]*Duracraft Corp. v. Holmes Products Corp.* (1998) 427 Mass. 156 [691 N.E.2d 935], cited by the dissent, is not apposite. As the *Duracraft* court itself pointed out, the Massachusetts statute at issue in that case "differs from the anti-SLAPP statutes of other jurisdictions" (*id.* at p. 943, fn. 18) like California's, which in addition to asking what activity by the defendant a suit is based upon, "tests SLAPP suits by determining whether 'the plaintiff has established a probability that the plaintiff will prevail on the claim' " (*ibid.*). Moreover, there was in *Duracraft* "a substantial basis other than . . . petitioning activity to support [the plaintiff]'s claims" (*id.* at p. 943), i.e., a nondisclosure agreement not executed in connection with any litigation (see *id.* at p. 937). The claims at issue here, in contrast, are based wholly on protected activity. (See maj. opn., *ante,* at p. 90; dis. opn., *post,* at p. 99.) In any event, *Duracraft* does not, as the dissent asserts, support plaintiffs' argument that Sletten's having executed the release rendered his subsequent petitioning invalid. (See dis. opn., *post,* at p. 97.) In fact, the *Duracraft* court expressly rejected that theory, for reasons similar to those that lead us also to reject it. (See *Duracraft, supra,* at p. 942, fn. 17; compare maj. opn., *post,* at pp. 94-95.)

suit—to interfere with and burden the defendant's exercise of his or her rights.' " (*Beilenson v. Superior Court* (1996) 44 Cal.App.4th 944, 949 [52 Cal.Rptr.2d 357].) "Considering the purpose of the [anti-SLAPP] provision, expressly stated, the nature or form of the action is not what is critical but rather that it is against a person who has exercised certain rights" (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 652 [49 Cal.Rptr.2d 620]).

That contract and fraud claims are not categorically excluded from the operation of the anti-SLAPP statute does not mean, as plaintiffs suggest, that Sletten therefore cannot be sued for breaching his promises because his alleged breach was in filing claims in court. In so suggesting, plaintiffs fall prey, as did the Court of Appeal in *Ericsson*, to the fallacy that the anti-SLAPP statute allows a defendant to escape the consequences of wrongful conduct by asserting a spurious First Amendment defense. (See *Ericsson*, *supra*, 49 Cal.App.4th at p. 1601.) In fact, the statute does not bar a plaintiff from litigating an action that arises out of the defendant's free speech or petitioning (see *Equilon*, *supra*, 29 Cal.4th at p. 63); it subjects to potential dismissal only those actions in which the plaintiff cannot "state[] and substantiate[] a legally sufficient claim" (*Rosenthal*, *supra*, 14 Cal.4th at p. 412).[10] Contrary to plaintiffs' suggestion, moreover, applying the anti-SLAPP statute to an action based, as this one is, on alleged breach of a release does not take away from the releasee the constitutional right to petition the court to redress legitimate grievances. As our emerging anti-SLAPP jurisprudence makes plain, the statute poses no obstacle to suits that possess minimal merit. (See *Equilon, supra*, at p. 63; *Wilson v. Parker, Covert & Chidester, supra*, 28 Cal.4th at p. 821.)

Thus, contrary to the protestations of plaintiffs' counsel at oral argument, the anti-SLAPP statute neither constitutes—nor enables courts to effect— any kind of "immunity" for breach of a release or of other types of contracts affecting speech. When a " 'complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited' " (*Wilson v. Parker, Covert & Chidester, supra*, 28 Cal.4th at p. 821), it is not subject to being stricken as a SLAPP. In so providing, we have observed, the Legislature "weighed an appropriate concern for the viability of meritorious claims

---

[10]Nor does the anti-SLAPP statute interfere with what presumably is the typical litigant's use for a release that—as plaintiffs allege of the Release in this case—constitutes a contract not to assert claims, i.e., the pleading of the release as a defense to any claims which are, nevertheless, asserted. As noted earlier, plaintiffs successfully pled the instant Release as a defense to all the counterclaims Sletten advanced in the federal action except for his counterclaim for contribution and equitable indemnity, which the Release expressly preserved.

against the concern 'to encourage participation in matters of public significance' " (*Briggs, supra*, 19 Cal.4th at p. 1122).

The Legislature's inclusion of a merits prong to the statutory SLAPP definition (§ 425.16, subd. (b)(1)) thus, contrary to the dissent's suggestion, preserves appropriate remedies for breaches of contracts involving speech by ensuring that claims with the requisite minimal merit may proceed. (See *Briggs, supra*, 19 Cal.4th at p. 1123; *Rosenthal, supra*, 14 Cal.4th at p. 412.) Indeed, as the statute is designed and as we have construed it, a defendant who in fact has validly contracted not to speak or petition has in effect "waived" the right to the anti-SLAPP statute's protection in the event he or she later breaches that contract.

Nor will our plain language construction of the anti-SLAPP statute unduly burden plaintiffs alleging breach of an agreement not to sue. Any such action presumably would involve at a minimum the pleading and proof of the alleged agreement. To require that plaintiffs substantiate speech-burdening claims at the outset (*Rosenthal, supra*, 14 Cal.4th at p. 412) by appending the alleged agreement to an affidavit stating the facts upon which the defendant's liability is based, as the anti-SLAPP statute provides (§ 425.16, subd. (b)), hardly seems excessive.

█ Noting the reference in the statute's preamble to lawsuits that chill the "valid exercise" of constitutional speech and petition rights (§ 425.16, subd. (a)), plaintiffs further argue, as does the dissent, that the anti-SLAPP statute does not apply to this action because any petitioning activity on which it is based was not "valid." We disagree. That the Legislature expressed a concern in the statute's preamble with lawsuits that chill the valid exercise of First Amendment rights does not mean that a court may read a separate proof-of-validity requirement into the operative sections of the statute. (Cf. *Equilon, supra*, 29 Cal.4th at p. 59 [chilling intent]; *Cotati, supra*, 29 Cal.4th at p. 75 [chilling effect]; *Briggs, supra*, 19 Cal.4th at p. 1118 [public interest].) Rather, any "claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise *and* support in the context of the discharge of the plaintiff's [secondary] burden to provide a prima facie showing of the merits of the plaintiff's case." (*Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1367 [102 Cal.Rptr.2d 864].) Plaintiffs' argument "confuses the threshold question of whether the SLAPP statute [potentially] applies with the question whether [an opposing plaintiff] has established a probability of success on the merits." (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 305 [106 Cal.Rptr.2d 906].)

Plaintiffs' argument also runs contrary to the legislative design. "The Legislature did not intend that in order to invoke the special motion to strike

the defendant must first establish her actions are constitutionally protected under the First Amendment as a matter of law. If this were the case then the [secondary] inquiry as to whether the plaintiff has established a probability of success would be superfluous." (*Fox Searchlight Pictures, Inc. v. Paladino, supra,* 89 Cal.App.4th at p. 305; accord, *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1089-1090 [114 Cal.Rptr.2d 825].) We must, of course, avoid any construction that would create such surplusage. (*Reno v. Baird* (1998) 18 Cal.4th 640, 658 [76 Cal.Rptr.2d 499, 957 P.2d 1333].)

 In sum, since plaintiffs' action against Sletten is based on his constitutional free speech and petitioning activity as defined in the anti-SLAPP statute, Sletten met his threshold burden of demonstrating that plaintiffs' action is one arising from the type of speech and petitioning activity that is protected by the anti-SLAPP statute.

### B. *Probability of Prevailing*

As noted, no cause of action qualifies as a SLAPP merely because the defendant's actions conceptually fall within the ambit of the statute's initial prong. Despite the fact Sletten has made a threshold showing that plaintiffs' action is one arising from statutorily protected activity, plaintiffs may defeat the anti-SLAPP motion by establishing a probability of prevailing on their claim. (See generally *Equilon, supra,* 29 Cal.4th at p. 63.)[11]

The trial court denied Sletten's anti-SLAPP motion in a minute order stating simply that the motion was denied, issuing no other statement of decision. In affirming, the Court of Appeal opined that "the complaint is not subject to section 425.16" and expressly refrained from reaching the question whether plaintiffs had demonstrated a probability of prevailing. However, because plaintiffs' action arises from statutorily protected activity, the complaint *is* potentially subject to section 425.16. Accordingly, we shall reverse the judgment of the Court of Appeal. But because the Court of Appeal did not consider whether plaintiffs have established a probability of prevailing (§ 425.16, subd. (b)), we shall remand the cause to permit the court to address that question in the first instance. On reconsideration, therefore, the Court of Appeal should consider whether plaintiffs' fraud and contract claims have the minimal merit required to survive an anti-SLAPP motion.

---

[11]While the parties addressed the issue in their briefs in the Court of Appeal and to us, neither the petition for review nor the answer to the petition requested that we address the "minimal merit" prong of the statutory SLAPP definition.

For the foregoing reasons, the judgment of the Court of Appeal is reversed, and the cause is remanded with instructions that the Court of Appeal reconsider its decision in light of our opinion.

George, C. J., Kennard, J., and Moreno, J., concurred.

**BROWN, J.,** Dissenting.—The Legislature designed Code of Civil Procedure section 425.16 (hereafter section 425.16) to address a specific problem: Lawsuits, a traditional right that enables parties to shape law and government policy, could be deployed as a weapon barring rivals from meaningful access to judicial redress. (*California Transport v. Trucking Unlimited* (1972) 404 U.S. 508, 512 [92 S.Ct. 609, 612-613, 30 L.Ed.2d 642].) This *strategic* litigation could ensure parties prevailed by intimidating rivals instead of persuading judges and juries. Because traditional remedies for abusive litigation were ineffective (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 817 [33 Cal.Rptr.2d 446]), the SLAPP (strategic lawsuits against public participation) law was enacted to protect legitimate litigants from procedurally coercive tactics.

The specific SLAPP problem warrants a specific remedy. Unfortunately, the majority opts for an all-inclusive definition of SLAPP's, which ignores the practical impact of legal rules, treats identical cases differently, and may chill the right of petitioning the law was designed to protect. Rather than engage in the "subtle inquiry" necessary to distinguish proper petitioning from suppressive SLAPP's (Braun, *Increasing SLAPP Protection: Unburdening the Right of Petition in California* (1999) 32 U.C. Davis L.Rev. 965, 972), the majority appears willing to consider any suit a SLAPP, based largely on when it was filed. To the majority this is not problematic because courts will dismiss only meritless suits under the law. But its presumptive application of section 425.16 will burden parties with meritorious claims and chill parties with nonfrivolous ones.

The cure has become the disease—SLAPP motions are now just the latest form of abusive litigation. I respectfully dissent.

## I. NAVELLIER'S SUIT DID NOT "ARISE FROM" SLETTEN'S SUIT

After a conflict between Navellier and Sletten had spilled into court, Sletten traded his right to sue Navellier in exchange for Navellier's return to the Navellier Series Fund. (See *Navellier v. Sletten* (9th Cir. 2001) 262 F.3d 923, 933 (*Navellier*).) After Navellier continued to pursue his suit, Sletten

filed counterclaims. (See *id.* at p. 934.) Navellier, in turn, filed claims in state court for fraud and breach of contract.

Sletten filed a special motion pursuant to section 425.16 to strike Navellier's claims, asserting those claims "arose from" Sletten's protected First Amendment activity: i.e., filing his own counterclaims. In fact, neither of Navellier's claims properly falls under the SLAPP law. The breach of contract claim is not a SLAPP because Sletten had exchanged his right to sue through the release for consideration, and thus his petitioning was not a "valid exercise" of that right. (§ 425.16, subd. (a).) The fraud claim is not a SLAPP because, as the parallel companion case of *City of Cotati v. Cashman* (2002) 29 Cal.4th 69 [124 Cal.Rptr.2d 519, 52 P.3d 695] (*City of Cotati*) explains, the second suit was based not on the first suit, but on the underlying dispute between the parties.

### A. *The Breach of Contract Claim Is Not a SLAPP*

Navellier correctly claims that a suit alleging a breach of contract for violating a release does not implicate the right to petition, and thus falls outside the scope of section 425.16. His position is supported by *Duracraft Corp. v. Holmes Products Corp.* (1998) 427 Mass. 156 [691 N.E.2d 935] (*Duracraft*).[1] Like section 425.16, Massachusetts' anti-SLAPP statute is designed for broad application, and is not limited to matters of public concern. (*Duracraft*, at p. 941.) The *Duracraft* court nonetheless found the law inapplicable in a case comparable to *Navellier, supra*, 262 F.3d 923. The plaintiff and defendant were two producers that, at different times, both employed an individual named Marino. The plaintiff contended Marino breached a nondisclosure and confidentiality agreement; the defendant contended that suit was barred as a SLAPP. (*Duracraft*, at pp. 937-939.)

The court found the law did not restrict the plaintiff's suit, ruling the statute was not a license to breach a contract. "Many preexisting legal relationships may properly limit a party's right to petition, including enforceable contracts in which parties waive rights to otherwise legitimate petitioning. *A quintessential example of such a waiver is a settlement agreement, in which a party releases legal claims against an adversary that otherwise properly could be prosecuted by petitioning the court.* But neither this example nor contractual or fiduciary relationships in general exhaust the conceivable occasions in which a party assumes obligations that in turn limit

---

[1]Massachusetts law covers litigation *based on* protected activity, a phrase that is functionally equivalent to *arising from*. (See *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1114 [81 Cal.Rptr.2d 471, 969 P.2d 564].) Like our opinion in *City of Cotati*, the high court of Massachusetts recognized that " 'based on' does not mean 'in response to.' " (*Duracraft, supra*, 691 N.E.2d at p. 943, fn. 20.)

the party's subsequent free exercise of speech and petitioning rights. Furthermore, we are aware of no case that has immunized alleged breaches of preexisting legal obligations based on constitutional protection for the right to petition . . . ." (*Duracraft, supra*, 691 N.E.2d at pp. 942-943, fn. omitted, italics added.)

Like Marino, Sletten traded his right to engage in specified First Amendment activity (litigating) in exchange for consideration. After that waiver, his suit was not what section 425.16, subdivision (a), characterizes as a "valid exercise" of his right to petition. (See also *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 648, fn. 4 [49 Cal.Rptr.2d 620] [statute protects "legitimate petition rights"].) Sletten no longer possessed the lawful right to sue Navellier, and thus his nonexistent right could not be chilled or abridged. (See also *Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1367 [102 Cal.Rptr.2d 864] [improper campaign financing is not a valid exercise of First Amendment right and is thus excluded from the scope of § 425.16].)

The distinctive nature of Massachusetts' law required the *Duracraft* court to exclude the case from the law's scope altogether to validate the waiver. But even though California has a "second prong" that enables meritorious claims to survive, the threshold question is whether we should consider the release presumptively invalid and thus force Navellier to bear the burdens and costs of establishing its validity. Sletten may certainly seek relief from the release on the basis of duress, fraud, or other unconscionable means of obtaining his agreement, but this task does not require the extraordinary remedy of section 425.16.

B. *The Fraud Claim Is Not a SLAPP*

Even if the breach claim were properly subject to a motion to strike, the fraud claim is not, for the reasons we cited in *City of Cotati*. There, the City of Cotati (City) filed a declaratory action regarding the validity of its rent control ordinance, after the property owners (Owners) had challenged the ordinance in court. (*City of Cotati, supra*, 29 Cal.4th at p. 72.) We explained the City's suit did not "arise from" the Owners' suit, but that both arose from the underlying controversy regarding the ordinance and its validity. (*Id.* at p. 81.) The same analysis applies to this case: Both Sletten's and Navellier's suits arose from the underlying dispute concerning the validity of the release and Sletten's conduct in accepting it.

In *City of Cotati*, we note "the mere fact an action was filed after protected activity [petitioning] took place does not mean it arose from that activity."

(*City of Cotati, supra,* 29 Cal.4th at pp. 76-77.) We note the City's response resembled a cross-complaint, which may " 'arise[] out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges.' " (*Id.* at p. 77, quoting Code Civ. Proc., § 426.10, subd. (c).) We even credit the concession that the "City's action could not be a SLAPP if City had filed it as a counterclaim" to the initial suit. (*City of Cotati,* at p. 77, fn. omitted.)

Navellier's fraud claim arose not from Sletten's suit but from the alleged deception that occurred in July 1997, when Sletten signed the release. Navellier contends, inter alia, that Sletten averred he was represented by counsel who had reviewed and approved the release. Navellier allegedly relied on Sletten's averrals to return as a trustee. But Navellier subsequently learned Sletten had *not* been represented by counsel, and that Sletten had never intended to abide by the release. The facts constituting the gravamen of Navellier's claim therefore predated Sletten's suit.

The majority asserts "Sletten's negotiation and execution of the Release, therefore, involved 'statement[s] or writing[s] made in connection with an issue under consideration or review by a . . . judicial body.' " (Maj. opn., *ante,* at p. 90.) Of course, the only litigation pending at the time was Navellier's initial suit seeking to prevent his removal as trustee. There was no litigation concerning the validity of the release; the release itself was designed to *forestall* further litigation. The majority therefore recognizes Navellier's claim was based on and arose from "the same transaction, occurrence, or series of transactions or occurrences" that was initially litigated in the April 1997 suit.[2]

Were we to conclude otherwise, and decline to hold each suit related back to the underlying dispute, then Sletten's own counterclaim to Navellier's suit would be a SLAPP. As the Ninth Circuit Court of Appeals recalled, Navellier sued for breach of fiduciary duty, negligence, waste, and intentional interference with prospective economic advantage; Sletten answered by filing counterclaims for breach of contract and bad faith. (*Navellier, supra,* 262 F.3d at pp. 933-934.) The counterclaims stand on the same legal footing as Navellier's state court claims of breach of contract and fraud; either both parties' breach of contract claims relate back to the underlying dispute and the overall "transaction" (in which case neither party's suit is a SLAPP), or neither party's claim relates back, and thus both are SLAPP's.

---

[2] A " 'transaction' . . . is not confined to a single, isolated act or occurrence [like] a contract [citation], [or] a lease [citation] . . . but may embrace a series of acts or occurrences logically interrelated . . . ." (*Saunders v. New Capital for Small Business, Inc.* (1964) 231 Cal.App.2d 324, 336 [41 Cal.Rptr. 703].)

Navellier stands in the exact same position as the City in the companion case of *City of Cotati*. We have this on the authority of the City itself, which essentially recognized the congruence, although it described a hypothetical claim for breach of contract claim rather than one for fraud: "[A] person may sue another for breach of contract. The other person, however, may believe that there is no contract, and may sue the first person for declaratory relief to that effect. The second action is not barred by any litigation privilege; nor is it retaliatory. It merely seeks a declaration of the second person's rights as to the controversy raised in the first suit."[3]

The majority offers no basis for distinguishing this case from *City of Cotati*. In that case, we observe the City's complaint refers to the underlying controversy and does not mention Owners' suit itself. (*City of Cotati, supra*, 29 Cal.4th at pp. 77, 80.) But the same is true for Navellier's fraud claim, which cites the underlying controversy but does not mention Sletten's suit. There is thus no basis for reaching conflicting results in these cases. If the City's suit is not a SLAPP, neither is Navellier's. Neither arises from the preceding suit.

## II. THE "SECOND PRONG" DOES NOT REMEDY THE ERROR OF APPLYING THE LAW TO NAVELLIER

The majority dismisses any objection to its unrestricted application of section 425.16 by noting a suit does not officially become a SLAPP until the party fails to comply with the "second prong" of that provision. (Maj. opn., *ante*, at pp. 89, 93-94.) This ensures that suits possessing "minimal merit" will proceed, and thus, we are told, this construction poses no obstacle to meritorious plaintiffs. (*Id.* at pp. 93-94.) But although plaintiffs with clearly meritorious claims will indeed prevail—eventually—the second prong's required showing nevertheless imposes costs and burdens for which these plaintiffs will never be made whole.

Furthermore, the rule devised by the majority encourages a "race to the courthouse" to enjoy the benefit of favorable procedural rules. Finally, these provisions actually create *disincentives* for many individuals to bring petitions to seek redress. Although the Legislature enacted section 425.16 to

---

[3]This analysis conforms to our having drawn "a careful distinction between a cause of action based squarely on a privileged communication, such as an action for defamation, and one based upon an underlying course of conduct evidenced by the communication." (*White v. Western Title Ins. Co.* (1985) 40 Cal.3d 870, 888 [221 Cal.Rptr. 509, 710 P.2d 309].) Thus, where defendants counterclaimed, alleging that plaintiff Microsoft had abused judicial process by applying to freeze defendants' assets, the court relied on *White* in rejecting Microsoft's claim that the application was privileged, finding the allegedly privileged application was "only being used to prove the abuse of process claim, and is not the claim itself." (*Microsoft Corp. v. A-Tech Corp.* (C.D.Cal. 1994) 855 F.Supp. 308, 314.)

protect petitioning from any "chill," our unrestricted application of the law, which relies on the probability showing to eliminate true SLAPP's, will actually chill petitioning activity that is constitutionally protected.

The opinion's reliance on the "second prong" amounts to a rewriting of California summary judgment law in a way that significantly disadvantages plaintiffs. Plaintiffs now have the burden of proving the viability of their claims, without benefit of discovery. Furthermore, the statute provides defendants with the means to delay the proceedings, through both the initial motion and the consequent appeal. Plaintiffs will necessarily incur additional expense in defending against even meritless motions to strike.[4] Meritorious plaintiffs will ultimately prevail, but the presumptive application of section 425.16, which requires an early, affirmative showing of merit, without benefit of discovery, will impose costs on plaintiffs that will never be recouped.

Additionally, the presumptive application of section 425.16, pending the "second prong" analysis, creates an inappropriate incentive to "race to the courthouse." A party benefits merely by filing first.[5]

For example, Sletten's counterclaim was so devoid of merit that the federal district court properly granted Navellier's motion for summary judgment. (*Navellier, supra,* 262 F.3d at pp. 940-941.) But this defeat cost Sletten nothing but his own time and money, which he might have considered a worthwhile investment for his effort to overturn the release. By contrast, had he filed his suit after Navellier had filed a declaratory action as to the validity of the release, Sletten would have been liable for Navellier's fees and costs when the court determined Sletten's claim was baseless.

Similarly, Navellier was harmed by his delay. If he had filed first, he would not have needed to make an affirmative showing of his case without benefit of discovery. Furthermore, he could have collected costs and fees from Sletten for the latter's filing of a claim that both the federal district court and the Ninth Circuit Court of Appeals deemed fit for summary judgment, and thus one " ' "any reasonable attorney would agree . . . [was]

---

[4]The provisions for costs are not favorable to the plaintiff (the object of the motion to strike). Although the court shall impose costs and reasonable fees if it deems frivolous the motion to strike, the provisions also reward successful motions with costs and actual fees. (§ 425.16, subd. (c).) The plaintiff, asked to present only a prima facie case, is unlikely to present evidence that appears so overwhelming as to show the motion to strike was frivolous.

[5]Sletten actually benefited by filing the first motion to strike, although the procedural history below was unusual, as it involved litigation in both federal and state court. Although both parties had filed breach of contract claims, Sletten was the first party to characterize his opponent's claim as a SLAPP. The result of Sletten's motion to strike was that procedural standards were tilted to his advantage.

totally and completely without merit." ' " (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733] (*Wilson*), quoting *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 885 [254 Cal.Rptr. 336, 765 P.2d 498].) The disparate standards applied to parties based on when they arrive at the courthouse make a mockery of the legitimate statutory purpose of protecting litigants from coercive practices.

Finally, the majority's decision will chill the right to petition, which the SLAPP law was designed to protect. Parties with novel claims will now confront two layers of uncertainty: whether the court will deem the claim as arising from a former suit and whether the court will find a probability of success. Unfavorable findings to these questions will prove costly. Many parties, especially those with limited resources, will hesitate to file under these conditions.

This result will reduce petitioning and thus contradict the law's purpose. As the United States Supreme Court has observed, "In a representative democracy such as this . . . [the] government act[s] on behalf of the people and, to a very large extent, the whole concept of representation depends upon the ability of the people to make their wishes known . . . ." (*Eastern R. Conf. v. Noerr Motors* (1961) 365 U.S. 127, 137 [81 S.Ct. 523, 529, 5 L.Ed.2d 464].) For this reason, the Legislature found and declared "that it is in the public interest to encourage continued participation in matters of public significance." (§ 425.16, subd. (a).) We have thus broadly protected the right. Although frivolous actions are subject to sanction, " '[A]ny definition [of frivolous] must be read so as to avoid a serious chilling effect on the assertion of litigants' rights . . . . Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . . [*A claim*] *that is simply without merit is* **not** *by definition frivolous and should not incur sanctions. Counsel should not be deterred from filing such* [*claims*] *out of a fear of reprisals.*' " (*California Teachers Assn. v. State of California* (1999) 20 Cal.4th 327, 340 [84 Cal.Rptr.2d 425, 975 P.2d 622], quoting *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].) In *Wilson*, we recognized that the potential imposition of tort liability for malicious prosecution would "unduly burden[]" legitimate nonfrivolous petitioning. (*Wilson, supra*, 28 Cal.4th at p. 820.) These burdens chill legitimate litigants.

This chill will now fall upon plaintiffs who have a novel, untested claim that is not obviously devoid of merit but for which there is not yet any supporting legal authority. The proper functioning of our legal system may depend on the bringing of such suits, which courts may reject if they indeed lack merit. But now that parties may be subject to the additional burden of their opponents' fees and costs, they will hesitate to do so.

### III. Conclusion

The United States Supreme Court has distinguished between "situations in which persons use the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." (*City of Columbia v. Omni Outdoor Advertising, Inc.* (1991) 499 U.S. 365, 380 [111 S.Ct. 1344, 1354, 113 L.Ed.2d 382].) The SLAPP law aimed to prevent the former: "[P]artici-pation should not be chilled through abuse of the judicial *process*." (§ 425.16, subd. (a), italics added.) Thus, SLAPP's were distinctive and worthy of special sanction. "SLAPP suits are brought to obtain an *economic* advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff. . . . [T]he plaintiff does not expect to succeed in the lawsuit, only to tie up the defendant's resources . . . ." (*Wilcox v. Superior Court, supra,* 27 Cal.App.4th at p. 816.) The SLAPP law was necessary because the law was otherwise impotent to stop such abuses of process. "[L]ack of merit [in one's claims] is not of concern to [a SLAPPing] plaintiff because the plaintiff does not expect to succeed in the lawsuit, only to tie up the defendant's resources for a sufficient length of time to accomplish plaintiff's underlying objective. [Citation.] As long as the defendant is forced to devote its time, energy and financial resources to combating the lawsuit its ability to combat the plaintiff in the political arena is substantially diminished. . . . [¶] . . . Because winning is not a SLAPP plaintiff's primary motivation, defendants' traditional safeguards against meritless actions (suits for mali-cious prosecution and abuse of process, requests for sanctions) are inad-equate to counter SLAPP's. Instead, the SLAPPer considers any damage or sanction award which the SLAPPee might eventually recover as merely a cost of doing business. [Citation.] By the time a SLAPP victim can win a 'SLAPP-back' suit years later the SLAPP plaintiff will probably already have accomplished its underlying objective." (*Id.* at pp. 816-817, fn. omitted.)

By contrast, as the Court of Appeal below observed, the instant case involved merely an attempt to obtain a favorable *outcome.* "The complaint herein is nothing more than a dogged effort to obtain damages for Sletten's alleged breach of the release he signed. A legitimate dispute exists between the parties over the validity of the release. Navellier and NMI have not engaged in oppressive litigation to bludgeon Sletten into submission. Each party is utilizing the federal and state judicial systems in a permissible manner to achieve its economic goals. Accordingly, the complaint is not subject to section 425.16."

Distinguishing SLAPP's from legitimate petitioning is challenging but essential. Our proper solicitude for one party's right to petition cannot come

at the expense of the other party's parallel right. "[T]he right to seek judicial relief for redress of grievances [is] too fundamental in character to permit petitioning activity to be turned against the petitioning party in the absence of a showing that the petitioning activity had lost its constitutionally privileged status. . . ." (*Protect Our Mountain v. District Court* (Colo. 1984) 677 P.2d 1361, 1367.)[6] For this reason, the Supreme Court of New Hampshire invalidated that state's law for unduly restricting the rights of the alleged SLAPPer: "A solution cannot strengthen the constitutional rights of one group of citizens by infringing upon the rights of another group." (*Opinion of the Justices* (1994) 138 N.H. 445 [641 A.2d 1012, 1015].)

Under the majority's rule, suits are presumptively SLAPP's until the plaintiff affirmatively makes a requisite showing. This will deter parties with novel claims, burden parties with meritorious ones, and prevent courts from hearing legal theories that warrant consideration. Frivolous filers will gain a new bargaining chip for settlement; a threatened motion to strike, even if unsuccessful, will cost meritorious litigants time and money. In short, the majority's holding helps unmeritorious parties like Sletten who file first and harms meritorious parties like Navellier who file second. This undermines a litigant's right to petition and our justice system as a whole.

Baxter, J., and Chin, J., concurred.

---

[6]Professor Pring considered this case a "model" for anti-SLAPP legislation. (Pring, *SLAPPs: Strategic Lawsuits Against Public Participation* (1989) 7 Pace Envtl. L.Rev. 3, 18.)