Filed 10/30/13  Calhome v. Mun CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

|  |  |
|---|---|
| CALHOME, INC.,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>PRISCILLA CHUNG KA MUN et al.,<br><br>        Defendants and Respondents. | B241352<br><br>(Los Angeles County<br> Super. Ct. No. BC475552) |

        APPEAL from orders of the Superior Court of Los Angeles County.  Barbara M. Scheper, Judge.  Affirmed.

        Brown Gitt Law Group, Cynthia E. Gitt, and Lawrence L. Yang for Plaintiff and Appellant.

        Nemecek & Cole, Jonathan B. Cole, Susan S. Baker and Mark Schaeffer for Defendant and Respondent George Owen Feldman.

        No appearance by Defendant and Respondent Priscilla Chung Ka Mun.

* * * * * * * * * *

Plaintiff and appellant Calhome, Inc., filed an action for fraud and related claims against a former employee, defendant Priscilla Chung Ka Mun[1], and an attorney, defendant and respondent George Owen Feldman. Both defendants separately filed special motions to strike pursuant to Code of Civil Procedure section 425.16 (section 425.16). The trial court granted in part and denied in part Mun's special motion to strike, and granted Feldman's motion in its entirety, dismissing him from the action. Plaintiff appeals both orders. We conclude both defendants discharged their respective movant's burden to show the dismissed claims arose from petitioning activity protected by section 425.16, and that plaintiff failed to show a probability of prevailing on any of the challenged claims. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff operates a "retail merchandise business," primarily importing Chinese-made recreational sports equipment, dirt bikes and similar items. Michael Ting is its president. Defendant Mun, a citizen of Hong Kong, was in the United States on a student visa and had obtained a business degree from California State Polytechnic University in Pomona. In March 2010, Ting interviewed Mun for a position with the company and subsequently offered her a job. According to Ting, Mun was offered a salaried position, with pay of $2,000 per month, to handle the company's payroll, and she accepted that position.

### 1.    The Visa Application

Defendant Feldman prepared and filed, with the United States Citizen and Immigration Services office (USCIS), a visa application for Mun to be granted H-1B status (temporary worker status) based on her employment offer from plaintiff. The visa application stated Mun was offered the position of "Business Analyst" at the hourly rate of $18.30, with anticipated work hours of 30 to 32 hours per week, and did not identify her position as payroll manager for a $2,000 per month salary. Plaintiff, as the prospective employer, is identified as the "petitioning party" and Mun, as the

---

[1]    Mun did not file a respondent's brief or otherwise appear before this court.

2

"beneficiary." The visa application was granted, which provided Mun a two-year period of temporary worker status. Mun worked for plaintiff for approximately a year and a half. She resigned in October 2011; the record does not reflect the basis for the resignation.

### 2. Mun's Wage Claim

Following her resignation, Mun, represented by an attorney not affiliated with Feldman, filed a claim for overtime pay with the California Department of Industrial Relations, Division of Labor Standards Enforcement (DLSE). The labor commissioner sent notice to the parties of the setting of a conference for February 14, 2012, to discuss the validity and potential settlement of Mun's claim. The notice reflected that Mun's wage claim sought unpaid overtime earned from March 1, 2010, through October 20, 2011, at the following rates: 173 hours at $19.04 per hour, 354 hours at $20.77 per hour, and 501 hours at $21.63 per hour (all referenced as reflecting time and a half of Mun's regular rate of pay). The record is not clear, but Mun's wage claim was apparently withdrawn, abandoned or otherwise dismissed at some point before the February 2012 conference.

### 3. The Civil Action

On December 20, 2011, plaintiff filed this action against Mun and Feldman, stating five causes of action: (1) fraud as against both Mun and Feldman; (2) breach of oral contract against Mun; (3) negligence against Mun; (4) negligence against Feldman; and (5) violation of Business and Professions Code section 17200 against Feldman.

The gravamen of plaintiff's action is fraud. Plaintiff alleged that Mun and Feldman conspired to defraud plaintiff into hiring Mun with the intent to "entrap" plaintiff and fabricate a claim for unpaid wages. Specifically, plaintiff alleged Feldman and Mun concealed from plaintiff that the visa application submitted to the USCIS falsely claimed Mun was being hired for a part-time position at the hourly rate of $18.30, when she had been hired for a salaried position as a payroll manager at the rate of $2,000 per month. Plaintiff further alleged Feldman forged Ting's signatures on the visa application and other documents submitted to the USCIS, and that Mun fabricated her time records.

3

Apart from punitive damages, plaintiff's only allegation of actual damage in the fraud cause of action is that "Mun initiated a claim for alleged unpaid overtime." In the contract claim, plaintiff alleged damages based on having been "charged with a claim for unpaid overtime allegedly owing to Mun" and requested attorney fees. In the negligence claim, plaintiff alleged it was damaged because it had "to face an inflated wage claim."

### 4. Mun's Special Motion to Strike

Mun contended the claims against her arose from her protected petitioning activity before the DLSE, primarily the filing of her administrative claim for unpaid overtime. Mun also argued plaintiff could not establish the probability of prevailing because her claim and statements to the DLSE were absolutely privileged pursuant to the litigation privilege codified at Civil Code section 47, subdivision (b).

Plaintiff opposed the motion, relying on a declaration from Ting, attesting to the circumstances under which he hired Mun. He explained Mun was offered, and accepted, the position of payroll manager at the rate of $2,000 per month. Ting stated plaintiff "agreed to apply for [a] temporary working visa" for Mun. He stated Mun "represented" she understood the laws concerning employee pay and overtime and she would "assure" that plaintiff would not incur any liabilities for unpaid wages. Ting explained that plaintiff had a company-wide policy of requiring pre-approval for any employee who was going to work overtime hours, and that during Mun's tenure at the company, she never sought or obtained approval to work overtime hours. Ting stated he was "surprised" by Mun's claim for overtime pay because she functioned as a salaried, management employee, and was therefore exempt.

Ting stated that after Mun filed her claim with the DLSE, plaintiff engaged counsel who learned from Feldman, "Mun's immigration attorney," that Mun had misrepresented her position and rate of pay in the visa application.

Plaintiff's opposition also included a one-paragraph declaration of employee Cammy Yeung, who attested she appeared on behalf of the company at the DLSE settlement conference in February 2012, and was told Mun's claim was no longer pending.

4

On March 26, 2012, the court granted Mun's motion in part, striking the first cause of action for fraud and the second cause of action for breach of oral contract, finding both claims were based on protected petitioning activity and that plaintiff could not show a probability of prevailing because the claims were barred by the litigation privilege. The court denied the motion as to the third cause of action for negligence, finding it was not based on protected activity, and as to the fourth and fifth causes of action because Mun lacked standing to challenge those claims that were pled only against Feldman.

### 5. Feldman's Special Motion to Strike

Feldman argued the three claims against him arose from protected petitioning activity under section 425.16 because the complained-of conduct was his work in preparing and presenting the visa application regarding Mun to the USCIS. Feldman further argued such acts were immune from derivative actions based on the litigation privilege.

Feldman submitted a lengthy declaration in support of his motion, along with 14 exhibits and a declaration from his paralegal, Rosanna Ho. Feldman explained he has been handling immigration matters for over 33 years, and that an H-1B visa is a type of visa in which the prospective employer petitions for a temporary work visa for a foreign national to be employed in a "specialty occupation." An H-1B visa application also requires the employer to submit a Labor Condition Application (LCA) specifying the nature of the work, and typically a formal written job offer is also included in the materials presented to the USCIS.

Feldman stated Mun contacted him in July 2010, based on a referral from plaintiff and one of its employees, Ms. Yeung, whom Feldman had previously assisted on behalf of plaintiff in obtaining a visa. Mun inquired about obtaining a visa based on an offer of employment from plaintiff for a position as a "business and marketing specialist." Feldman had his paralegal, Ms. Ho, contact plaintiff with a specific list of questions regarding the proposed position for Mun so that he could begin drafting the petition documents. Ms. Ho's declaration details the conversation she had with Samantha Chang

5

(an employee of plaintiff) to obtain the information about the offer of employment to Mun, and also includes her notes of that conversation.

Based on the information obtained from plaintiff, Feldman prepared the LCA and visa application materials reflecting that plaintiff was seeking to expand into the competitive market of recreational vehicles and needed a qualified market researcher and analyst. The draft materials were forwarded to Mun with directions to have Ting review and execute the documents. Thereafter, Mun returned the executed materials to Feldman for submission to the USCIS. Feldman, who had previously prepared the visa application for Ms. Yeung to work for plaintiff, was familiar with Ting's signature and had no reason to believe his signatures on Mun's LCA, job offer letter, and petition application were forgeries. The visa application for Mun was approved for a two-year period ending December 31, 2013.

Plaintiff opposed Feldman's motion with a declaration from Ting, largely duplicative of his declaration submitted in opposition to Mun's motion. Ting added that after Feldman filed his motion to strike, he first learned that Feldman "claimed" he was acting as plaintiff's attorney in filing the visa application for Mun. Ting explained he had never met Feldman, never spoken with him and never signed any documents in Feldman's presence. He also specifically denied signing any of the visa application documents and stated that the signatures purporting to show his name were forgeries.

On May 9, 2012, the court granted Feldman's motion in its entirety, ordering Feldman dismissed from the action. The court found the claims against Feldman arose from activity protected under section 425.16 and that plaintiff had failed to show a probability of prevailing on any claim, including the negligence theory against Feldman which was "not susceptible" to being characterized as a claim for legal malpractice.

This appeal, from both the March 26 and May 9, 2012 orders, followed.

## DISCUSSION

"A ruling on a section 425.16 motion is reviewed de novo. [Citation.] We review the record independently to determine whether the asserted cause of action arises from activity protected under the statute and, if so, whether the plaintiff has shown a

6

probability of prevailing on the merits." (*Stewart v. Rolling Stone, LLC* (2010) 181 Cal.App.4th 664, 675; accord, *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

In resolving a special motion to strike under section 425.16, the court engages in a two-step analysis, keeping in mind the statutory command the statute "shall be construed broadly" to effectuate its purpose. (§ 425.16, subd. (a).) The court must first determine whether the moving defendant "has made a threshold showing that the challenged cause of action is one arising from protected activity." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).) If the court determines the defendant met this initial burden, "it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Ibid*.) "In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) Only those causes of action that satisfy "*both* prongs" of section 425.16, i.e., arise from protected activity and lack minimal merit, are subject to being stricken under the statute. (*Navellier,* at p. 89.) The court does not weigh credibility or the probative strength of the competing evidence, but rather, accepts as true the evidence and reasonable inferences favorable to the plaintiff, and evaluates the defendant's evidence only to determine whether it defeats the plaintiff's claim as a matter of law. (*Oasis West Realty v. Goldman* (2011) 51 Cal.4th 811, 820 (*Oasis West*).)

### 1.    The Claims Against Mun

The court granted Mun's motion as to the first cause of action for fraud and the second cause of action for breach of oral employment contract. We conclude the motion was properly granted, because plaintiff's claims against Mun were based on protected petitioning activity, and plaintiff failed to present a probability of prevailing on those claims.

Subdivision (e) of section 425.16 describes four categories of protected conduct within the meaning of subdivision (b)(1). As relevant here, such conduct includes "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or

7

oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e).)

The act of filing a wage claim with the DLSE constitutes an exercise of Mun's constitutional right to petition. Her administrative wage claim, and the statements contained therein, qualify as a writing made before an official proceeding authorized by law within the meaning of section 425.16, subdivision (e)(1). (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1113-1115 [explaining " ' "[t]he constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking administrative action" ' " and finding tenant complaint to Department of Housing and Urban Development and small claims action were encompassed by section 425.16]; see also *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 736 (*Jarrow Formulas*) [" 'the Legislature's intent consistently has been to protect all direct petitioning of governmental bodies' "].)

Plaintiff argues Mun's filing of the wage claim was only incidental to the main allegations that Mun and Feldman tricked plaintiff into hiring Mun, who then fabricated time records to support a false overtime claim. However, plaintiff's fraud and contract claims are inextricably entwined with Mun's filing of the wage claim for unpaid overtime. The complaint alleged Mun and Feldman were coconspirators in a scheme to defraud plaintiff into hiring Mun, fabricating time records and setting up a "bogus" overtime claim that would be paid and chargeable against plaintiff's account. The only damage allegedly sustained by plaintiff is that Mun "initiated a claim for alleged unpaid overtime" and that plaintiff had to deal with "a claim for unpaid overtime allegedly owing to Mun." According to the complaint, the goal of the conspiracy was to obtain overtime payments that were not in fact due to Mun. Thus, Mun was pursuing the goal of the conspiracy when she filed a DLSE claim that was accepted and was being processed by that agency. We find Mun satisfied the first prong of the statute, thus shifting the burden to plaintiff to show a probability of prevailing on the challenged claims.

8

In the trial court, Mun argued plaintiff's claims could not, as a matter of law, be established because they were almost entirely based on statements made by Mun in her claim for overtime pay before the DLSE, and such statements were absolutely privileged pursuant to the litigation privilege. The litigation privilege embodied in Civil Code section 47 provides, in relevant part, that a "privileged publication or broadcast is one made [¶] . . . [¶] (b) In any (1) legislative proceeding, (2) judicial proceeding, [or] (3) in any other official proceeding authorized by law." It is an absolute privilege that is construed broadly to apply to all statements made in " 'all kinds of truth-seeking proceedings,' including administrative, legislative and other official proceedings." (*People ex rel. Gallegos v. Pacific Lumber Co*. (2008) 158 Cal.App.4th 950, 958.)

The Supreme Court has explained that one of the main purposes of the litigation privilege " 'is to assure [the] utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing.' [Citations.]" (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 213.) Plaintiff has not persuaded us the litigation privilege does not apply to the statements made by Mun in her DLSE claim. Even if the litigation privilege did not apply, plaintiff has not demonstrated a likelihood of success on the merits.

Plaintiff offered little or no evidence in support of its claims against Mun. No evidence was proffered to support the allegation that Mun had fabricated time records to bolster the fraudulent overtime claim. Plaintiff instead relied solely on Ting's declaration that he hired Mun as a salaried payroll manager for $2,000 per month (not as an hourly employee), and that Mun never told him she had worked any overtime hours, nor had she ever obtained approval from him to work overtime hours which was company policy. Ting also asserted, in a conclusory fashion, that Mun forged the signatures contained in the visa application.

Further, plaintiff's theory of Feldman and Mun's conspiracy to defraud rests on the allegation that Mun misrepresented the nature of her position and her rate of pay in the visa application. However, plaintiff offered no evidence that the purportedly forged visa application was ever presented to the DLSE. Indeed, the numbers reflected in the

9

DLSE notice sent to the parties regarding the February 2012 conference appear to show that Mun's overtime claim had been based on a much lower hourly rate than the $18.30 set forth in the visa application; the highest rate of pay sought by Mun was $21.63 per hour and that was *a time-and-a-half hourly rate calculation*.

More importantly, plaintiff offered *no evidence of damage*, conceding that when plaintiff appeared, through its employee Yeung, at the February 2012 settlement conference before the DLSE, plaintiff was told Mun's claim was no longer pending. Plaintiff therefore did not have to pay a "bogus" overtime claim or any claim at all, and did not offer any other evidence of consequential or incidental damages. As such, plaintiff failed to offer prima facie evidence as to the essential elements of its claims for fraud and breach of contract against Mun and those claims were properly stricken pursuant to section 425.16.

### 2. The Claims Against Feldman

The court granted Feldman's special motion to strike in its entirety, dismissing him from the action. We find the core allegations against Feldman are also based on protected petitioning activity, and plaintiff failed to show a probability of prevailing on those claims.

As to the first prong, Feldman established that all of the allegations against him arose from his conduct in preparing and filing the visa application before the USCIS, which in turn, facilitated and provided supporting evidence for Mun's fraudulent overtime claim with the DLSE. Feldman's alleged involvement in the conspiracy with Mun is protected petitioning activity for the same reasons discussed above concerning Mun. An act in furtherance of the constitutional right to petition within the meaning of the statute includes "qualifying acts committed by attorneys in representing clients." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.)

Plaintiff argues section 425.16 does not apply however because Feldman was acting as *plaintiff's attorney* in filing the visa application. In so arguing, plaintiff relies principally on *PrediWave Corporation v. Simpson Thacher & Bartlett* (2009) 179 Cal.App.4th 1204 (*PrediWave*). *Prediwave* concluded it was unreasonable to read

10

section 425.16 as applying to a client's cause of action against his or her former attorney based upon that attorney's "statements made or conduct undertaken in representing" the client. (*Id*. at p. 1228.) The court reasoned that such claims are not being brought to "chill the exercise" of speech or petitioning activity undertaken by the attorney within the meaning of section 425.16, but rather to complain and seek redress for the quality of the former attorney's work on behalf of the client. (*PrediWave,* at pp. 1227-1228.)

Other courts have held the same. (See, e.g., *Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1540 (*Kolar*) [in a " 'garden variety' " legal malpractice claim, "the client is not suing because the attorney petitioned on his or her behalf, but because the attorney did not competently represent the client's interests while doing so" and the threat of malpractice encourages attorneys to act competently and such claims should not be subject to a motion to strike].)

But there is no bright line rule that all claims by a client against its attorney are excluded from the application of section 425.16. Our Supreme Court, in rejecting an argument that malicious prosecution claims as a class of claims were not subject to a motion to strike, instructed that nothing in the language of section 425.16 " 'categorically excludes any particular type of action from its operation.' " (*Jarrow Formulas*, *supra*, 31 Cal.4th at p. 735, quoting *Navellier*, *supra*, 29 Cal.4th at p. 92; see also *Fremont Reorganizing Corporation v. Faigin* (2011) 198 Cal.App.4th 1153, 1170-1171; *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton* (2005) 133 Cal.App.4th 658, 672-675 (*Peregine*).)[2]

_____

**2**      The Supreme Court has not yet ruled on whether a blanket rule excluding all claims by clients against their former attorneys from the scope of section 425.16 is appropriate. In *Oasis West*, *supra*, the court was presented with a case in which a client sued a former attorney for engaging in petitioning activity before a city council considering a development plan with respect to a project the attorney had previously been responsible for shepherding through the permit process when acting as the client's counsel. The client alleged the attorney breached his duty of loyalty by later advocating, ostensibly on his own behalf and informally on behalf of a neighborhood organization, against the project and causing the client to incur substantial fees in obtaining final approval of the project over the neighborhood objections. The trial court had granted the

11

More to the point, plaintiff's claims against Feldman are not remotely in the nature of garden variety legal malpractice. Indeed, the complaint does not allege that Feldman performed below the standard of care, causing damage to plaintiff. Quite the contrary: the complaint alleges that Feldman was involved in a scheme to defraud plaintiff that involved Feldman *pretending* to be plaintiff's attorney before the USCIS when he was actually conspiring with Mun to create a bogus overtime claim chargeable against plaintiff. It was Feldman, *not plaintiff*, who asserted he represented plaintiff in the preparation of the visa application for the benefit of Mun.

While plaintiff titled one of its claims against Feldman "negligence," the title is not dispositive. "[A] court considering a special motion to strike must examine the allegedly wrongful conduct itself, without particular heed to the form of action within which it has been framed." (*Peregrine*, *supra*, 133 Cal.App.4th at p. 671; accord, *Navellier*, *supra*, 29 Cal.4th at p. 92.) Feldman is alleged to have engaged in fraud, including, according to Ting's declaration, *misrepresenting* to the USCIS that he was acting on behalf of plaintiff in filing the visa application. Indeed, in opposing the motion, plaintiff wholly disavowed any attorney-client relationship existed with Feldman. Ting stated in his declaration that he first learned about Feldman's "claim" of representing plaintiff as the petitioning party after Mun filed the wage claim. He adamantly denied ever having spoken to Feldman or having executed any of the documents presented to the USCIS. Having disavowed any attorney-client relationship with Feldman, plaintiff is in no position to rely on cases like *PrediWave* and *Kolar* which hold section 425.16 does

---

attorney's special motion to strike. In reversing, the Supreme Court did not address the first prong of the statutory analysis, stating "[o]rdinarily we would proceed to consider the two prongs in order. In light of this court's 'inherent, primary authority over the practice of law' [citation], however, we will proceed in these particular circumstances directly to the second prong, inasmuch as we have readily found that [the client] has demonstrated a probability of prevailing on its claims." (*Oasis West, supra,* 51 Cal.4th at p. 820.)

12

not apply to complaints that seek redress for the quality of a former attorney's work on behalf of the client.

As to the second prong, plaintiff failed to show a probability of prevailing on any claim against Feldman. Viewing the evidence in the light most favorable to plaintiff, and indulging all reasonable inferences in its favor, the record fails to contain any evidence plaintiff can prevail on the three claims against Feldman. We need not reiterate all of the points explained above regarding the lack of evidence proffered by plaintiff in opposing defendant Mun's motion. Suffice it to say, plaintiff did not offer any additional material evidence in support of the claims against Feldman. Plaintiff failed to offer *any* evidence of damage actually incurred based on Feldman's alleged misconduct. Plaintiff failed to show its claims against Feldman have "minimal merit" (*Navellier*, *supra*, 29 Cal.4th at p. 89) and they were therefore properly stricken.

## DISPOSITION

The orders of March 26, 2012, and May 9, 2012, are affirmed. Priscilla Chung Ka Mun and George Owen Feldman shall recover costs on appeal.


                                        GRIMES, J.


We concur:



            RUBIN, Acting P. J.



            FLIER, J.


13