Filed 3/23/15  Jin v. Kwok CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JERRY JIN et al., | H039894 |
| Cross-complainants and Respondents, | (Santa Clara County Super. Ct. No. 1-11-CV211000) |
| v. | |
| LEO KWOK et al., | |
| Cross-defendants and Appellants. | |

The trial court denied the anti-SLAPP[1] motion brought by appellants Leo Kwok, Clement Yu, James Cai and Schein & Cai LLP (hereafter collectively "appellants") on the ground that the motion was untimely under Code of Civil Procedure section 425.16, subdivision (f).[2]  The motion was directed at a second amended cross-complaint filed by respondents Frank Larsen and Jerry Jin (hereafter collectively "respondents") which alleged a cause of action for malicious prosecution against appellants.

On appeal, appellants argue their motion was:  (1) timely; and (2) substantively meritorious in that the second amended cross-complaint arises from protected activity and respondents cannot demonstrate a probability of succeeding on the merits.

We find the trial court did not abuse its discretion in finding the anti-SLAPP motion untimely and shall affirm.

---

[1] "SLAPP" stands for " 'strategic lawsuits against public participation.' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 85.)

[2] Further unspecified statutory references are to the Code of Civil Procedure.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In 2007, Jin founded Hoda Globe Company (HGC) to produce "solar electrical power generation equipment."  In exchange for convertible promissory notes, Kwok and Yu loaned HGC a total of $75,000 in 2008.  Under the terms of the notes, HGC would be obligated to repay the loans with accrued interest if it failed to secure at least $1 million in equity financing by the end of the year.  When HGC was unable to obtain such financing, Kwok and Yu repeatedly demanded repayment in 2009 and 2010.

In May 2010, Jin[3] advised Kwok and Yu that HGC was insolvent and its assets would be sold at auction later that month.  According to Kwok and Yu, Jin and Larsen, both of whom were members of HGC's board of directors, ignored their written requests for further details about this auction.

On May 21, 2010, Kwok and Yu, represented by Cai and Schein & Cai LLP, filed an action against, among others, HGC, Jin and Larsen alleging causes of action for fraud, securities fraud, conversion, negligence and breach of contract (Santa Clara County Superior Court case No. 110CV172599, hereafter "Case No. 2599").  Kwok and Yu moved for a temporary protective order to block any transfer of HGC's assets and provided an undertaking.

In July 2011, Kwok and Yu dismissed without prejudice all of its tort claims against HGC, Jin and Larsen, leaving only their breach of contract cause of action in Case No. 2599.  Kwok and Yu subsequently claimed to have learned that respondents transferred HGC's intellectual property to one or more offshore entities and brought an ex parte motion to amend their complaint to add a cause of action under the Uniform Fraudulent Transfer Act (Civ. Code, §§ 3439-3439.12) and to continue the trial date.  The motions were denied on October 4, 2011, and trial in Case No. 2599 commenced on

_____

[3] Jin was HGC's president and chief executive officer.

2

October 11, 2011.  On December 23, 2011, the trial court entered judgment in favor of Kwok and Yu and against HGC in the amount of $80,165.75.

On October 13, 2011, Kwok and Yu filed a second action against HGC, two foreign entities,[4] Jin and Larsen, setting forth causes of action for violation of the Uniform Fraudulent Transfer Act, breach of fiduciary duty, negligence and conspiracy. (Santa Clara County Superior Court case No. 111CV211000, hereafter "Case No. 1000.") The complaint alleged that Jin and Larsen improperly transferred HGC's intellectual property assets to the foreign entities while Case No. 2599 was pending.

On May 4, 2012, Jin and Larsen cross-complained against appellants, alleging two causes of action for malicious prosecution and abuse of process.  Jin and Larsen alleged that Case No. 2599 was, with the exception of its breach of contract claim, instituted without probable cause, with malice and was terminated in favor of Jin and Larsen.  After appellants[5] demurred, Jin and Larsen filed a first amended cross-complaint on May 25, 2012.  The first amended cross-complaint substituted a cause of action for wrongful attachment in place of the abuse of process cause of action in the original pleading. Appellants' demurrer to the first cause of action in the first amended cross-complaint was sustained with leave to amend and the operative second amended cross-complaint was filed on August 14, 2012.

Appellants demurred to the second amended cross-complaint on September 13, 2012.  On October 19, 2012, the trial court overruled the demurrer to the malicious prosecution cause of action, but sustained the demurrer to the wrongful attachment cause of action without leave to amend.  In its order, the trial court further noted that, although

_____

[4] These entities were Haetl (Cayman) Ltd., allegedly based in the Cayman Islands, and Hoda Suzhou, Ltd., allegedly based in China.  Neither entity is a party to the instant appeal.

[5] Cai and Schein & Cai LLP sought to qualify their appearance by indicating in each of the demurrers that they were appearing "preemptively because not yet served."

Cai and Schein & Cai LLP were never served with the second amended cross-complaint, their participation in the demurrer meant "service has been waived."

Subsequently, counsel for respondents missed at least one case management conference and failed to appear at the November 8, 2012 order to show cause hearing. The trial court struck respondents' answer and dismissed the second amended cross-complaint. Appellants' counsel advised the court that he had reserved a December hearing date on an anti-SLAPP motion, but the court responded the date should be taken off calendar since the second amended cross-complaint had been dismissed. Appellants' counsel then engaged in the following colloquy with the trial court:

"Mr. Lavine: And just to be clear if it does go back on calendar because [respondent's counsel] make [*sic*] his [section 473] motion at some point, there is a time limit on those anti-SLAPP motions, 60 days out. I just want to make sure I'm not prejudicing our client's [*sic*] right to file for it at a later date.

"The Court: Well, I wouldn't think it would be by virtue of the dismissal of the cross-complaint.

"Mr. Lavine: I wouldn't think either. I just want to put that on the record.

"The Court: Okay."

Default was taken against respondents on November 14, 2012. As expected, respondents moved for relief from entry of default pursuant to section 473, subdivision (b), and that motion was granted on January 31, 2013. The trial court's order granting relief from default stated, in pertinent part, as follows: "[T]he orders re default and/or dismissal on November 8, 2012 and November 14, 2012 are hereby vacated and stricken, including any judgment and the orders or defaults striking both the answer to the amended complaint and [second amended cross-complaint], and . . . this case is restored to the active civil calendar."

Appellants' anti-SLAPP motion was filed on March 25, 2013. Jin and Larsen opposed the motion as untimely as it was not filed within 60 days of the filing of the

4

second amended complaint on August 14, 2012. Respondents also argued the substantive merits of the anti-SLAPP motion.

At the hearing on the motion, appellants' counsel addressed the untimeliness argument, raising the fact that he had previously engaged in a colloquy with the trial court about filing an anti-SLAPP motion during the order to show cause hearing at which respondents' answer and second amended cross-complaint were stricken. He further argued that, when respondents' section 473 motion was granted on January 31, "at that point it was incumbent upon [respondents' counsel] on behalf of the cross-complainants to re-file and re-serve that . . . cross-complaint because there was nothing on the books at that point. [¶] It was stricken. It wasn't temporarily held in abeyance. . . . [¶] But even so . . . from that January 31st date when we filed this motion on March 25th, 2013, 60 days had not passed."

The trial court denied the motion as untimely. In its written order, the trial court noted that "[appellants] filed their demurrer to the [second amended cross-complaint] only a month after the pleading was filed and served. Thus, [appellants] could have brought their anti-SLAPP motion along with their demurrer if they truly believed that [respondents]' lawsuit lacked any merit. . . . Furthermore, the parties have already engaged in pretrial discovery involving issues related to the pleadings in this action. . . . Therefore, to allow the late filing of this motion would undermine the goal of the anti-SLAPP statute which is to promptly resolve disputes before significant pretrial discovery expenses are incurred by the parties."

## II. DISCUSSION

### A. *Respondents' request for dismissal of the appeal and for sanctions*

In their brief, respondents request that we dismiss this appeal as frivolous and undertaken solely for delay. They further request that we impose sanctions in an unspecified amount against appellants pursuant to section 907 and California Rules of Court, rule 8.276(a)(1). Respondents contend that appellants' anti-SLAPP motion was

5

"undeniably" untimely and they failed to show how the trial court abused its discretion in denying their motion.  This appeal is, in respondents' view, nothing more than a continuation of appellants' efforts to delay the proceedings below.

Pursuant to California Rules of Court, rule 8.54(a), "(1) Except as these rules provide otherwise, a party wanting to make a motion in a reviewing court must serve and file a written motion stating the grounds and the relief requested and identifying any documents on which the motion is based. . . . [¶] (2) A motion must be accompanied by a memorandum and, if it is based on matters outside the record, by declarations or other supporting evidence."  Rather than file separate motions to dismiss and for sanctions, as required by this rule, respondents incorporated those arguments into their responding brief.  We decline to address their arguments on this basis, and summarily deny their requests.

We acknowledge that, we may, on our own motion, "impose sanctions . . . on a party . . . for: [¶] (1) Taking a frivolous appeal or appealing solely to cause delay. . . ." (Cal. Rules of Court, rule 8.276(a).)  Section 907 states that "[w]hen it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just."  However, we must provide written notice if we are considering such sanctions, allowing an opportunity for the party to file written opposition.  (Cal. Rules of Court, rule 8.276(c), (d).)

"[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive--to harass the respondent or delay the effect of an adverse judgment--or when it indisputably has no merit--when any reasonable attorney would agree that the appeal is totally and completely without merit."  (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)  Thus, we may impose sanctions either when an appeal indisputably has no merit, or when it is filed for an improper purpose.  For the reasons set forth below, we declined to consider sanctions against appellants and deny the request.

6

B. *The trial court did not abuse its discretion in denying the anti-SLAPP as untimely*

1. *Standard of review*

Appellants argue that, as a threshold matter, the question of "[w]hether a movant complied with the 60-day requirement allowed by statute for filing of an anti-SLAPP motion as a matter of right is reviewed de novo." In support of this proposition, appellants cite *In re George T*. (2004) 33 Cal.4th 620 (*George T*.).[6] This case is inapposite as it does not deal with anti-SLAPP motions at all. In *George T*., the California Supreme Court addressed the issue of criminal threats under Penal Code section 422, and held that the proper standard of review in such cases is independent review. (*George T*., *supra*, at p. 632.)

Pursuant to section 425.16, subdivision (f), an anti-SLAPP motion "may be filed within 60 days of the service of the [cross-]complaint or, *in the court's discretion*, at any later time upon terms it deems proper." (Italics added.) Because the statute expressly grants discretion to the trial court to permit or disallow the filing of an anti-SLAPP motion beyond the 60 day limit, we review its determination that the motion was untimely for an abuse of discretion. (*Olsen v. Harbison* (2005) 134 Cal.App.4th 278, 285.) The appellate court will interfere with the trial court's exercise of discretion only when it concludes that under all the circumstances, viewed most favorably in support of the decision, no judge reasonably could have made the challenged decision. (*Smith v. Smith* (1969) 1 Cal.App.3d 952, 958.)

2. *Analysis*

Appellants argue that the 60 day period to file their anti-SLAPP motion began to run no earlier than January 31, 2013, the date on which respondents were relieved of default and the second amended complaint restored. Because the second amended

---

[6] Appellants incorrectly cited this case as appearing at "33 Cal.App.4th 620."

complaint had been dismissed on November 8, 2012, due to respondents' failure to appear at one or more case management conferences, the 60 day period was reset when respondents obtained relief from default. Accordingly, the anti-SLAPP motion, filed on March 25, 2013, was timely. We disagree.

By statute, the 60 day window to file an anti-SLAPP motion begins to run on the date the pleading which it challenges is served. (§ 425.16, subd. (f).) Appellants claim the calculation of the 60 day period is "complicated" because "there was no proper service of the [second amended cross-complaint] on" them. However, any defect in service was waived by virtue of filing a demurrer to the second amended cross-complaint. (§ 1014; *Fireman's Fund Ins. Co. v. Sparks Construction, Inc.* (2004) 114 Cal.App.4th 1135, 1145.) Assuming without deciding there was no proper service of the second amended cross-complaint on appellants, the 60 day period began to run on the date they waived any objections to service by filing their demurrer, i.e., September 13, 2012. Barring any intervening events, the 60 days to file an anti-SLAPP motion would expire on November 12, 2012.

There was an intervening event in this case, however; specifically, respondents' failure to appear which resulted in the striking of their answer and dismissal of the second amended cross-complaint on November 8, 2012. Appellants claim this event in essence reset the 60 day clock to zero, and that it began to run again only upon respondents successfully obtaining relief from their default on January 31, 2013.

Appellants cite no authority for the proposition that the 60-day period within which an anti-SLAPP motion must be filed is restarted upon the operative pleading being stricken and subsequently reinstated. Our research has disclosed none either. The question is thus: Is the 60-day limitation period simply abated during the time that the operative pleading is stricken or is it reset to zero and start running anew when the pleading is restored? We think the answer is plainly that the period is abated, not reset.

8

To find otherwise would be contrary to the rationale of section 425.16, subdivision (f) to "facilitate the dismissal of an action subject to a special motion to strike early in the litigation so as to minimize the cost to the defendant." (*Chitsazzadeh v. Kramer & Kaslow* (2011) 199 Cal.App.4th 676, 682.) Another potential justification for the 60-day limitation is to "avoid tactical manipulation of the stays that attend anti-SLAPP proceedings." (*Olsen v. Harbison*, *supra*, 134 Cal.App.4th at p. 287.) Allowing the moving party to reset the 60-day clock merely because the pleading was stricken and subsequently reinstated would defeat the purpose of quickly eliminating SLAPP suits and increase the opportunities for engaging in tactical gamesmanship.

Under the circumstances here, viewed most favorably in support of the decision, we cannot say that the trial court abused its discretion in finding that the anti-SLAPP motion was untimely. Appellants state that they were prepared to file their anti-SLAPP motion on November 12, 2012, within the 60-day period, but were prevented from doing so by the dismissal of the second amended complaint on November 8 by the trial court. Presuming that is true, appellants are admitting they could have prepared and filed the motion in as little as four days. Yet, after respondents successfully moved for relief from default and the second amended complaint was restored on January 31, 2013, appellants waited an additional 53 days to file the anti-SLAPP motion. They offered no explanation, either to the trial court or to this court, to explain this delay.

Accordingly, we find the trial court did not abuse its discretion in finding the anti-SLAPP motion was untimely. Though we found no merit to appellants' arguments, however, we do not conclude that the appeal was frivolous or undertaken solely for purposes of delay and therefore find no basis for imposing sanctions.

## III.    DISPOSITION

The order is affirmed. Respondents are entitled to their costs on appeal.

9

_____
                                            Premo, J.

WE CONCUR:

_____
                    Rushing, P.J.

_____
                      Elia, J.