Filed 11/13/15  Gallant v. City of Alameda CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ANN MARIE GALLANT,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>CITY OF ALAMEDA,<br><br>        Defendant and Respondent. | A141508<br><br>(Alameda County<br> Super. Ct. No. RG11590505) |

Plaintiff Ann Marie Gallant appeals from a judgment of dismissal entered after the trial court granted the City of Alameda's "renewed" special motion to strike her complaint pursuant Code of Civil Procedure[1] section 425.16 (hereafter also referred to as the anti-SLAPP statute).  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

Ann Marie Gallant was formerly employed as the interim city manager for the City of Alameda (the city) pursuant to a written employment contract.  In her August 15, 2011, complaint, Gallant alleged four causes of action – "Labor Code § 1102.5(b),"[3]

---

[1]     All further unspecified statutory references are to the Code of Civil Procedure.

[2]     We recount only those facts necessary to resolve this appeal.

[3]     Labor Code section 1102.5, subdivision (b), reads, in pertinent part:  "An employer . . . shall not retaliate against an employee for disclosing information . . . to a government or law enforcement agency, . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation

1

"Labor Code § 1102.5(c),"[4] "declaratory relief," and "breach of contract" - all based on an allegation that at a December 28, 2010, special meeting, the city council voted to "terminate" her employment because (1) she refused to participate in illegal activity; and (2) she disclosed information pertaining to illegal activity to government agencies regarding a city council member. Gallant also sought a declaration to resolve the parties' "actual controversy" concerning the validity of the city council's vote to "terminate" her employment on December 28, 2010, alleging that the city council's vote violated section 2-2 of the city charter. According to Gallant, a new council member was installed on December 21, 2010, and therefore, the city council was prohibited from terminating Gallant's contract until ninety days had elapsed from that date. As to the breach of contract action, Gallant alleged that section 2 of the employment contract, required the city to give her a 90-day advance written notice to terminate the contract, but pursuant to section 2-2 of the city charter, the city council was prohibited from terminating the contract until ninety days had elapsed from December 21, 2010. Because the city council vote to terminate her contract on December 28, 2010, was purportedly void, and there had been no subsequent vote to terminate her contract, Gallant alleged the city's failure to pay her after "April 1, 2011," was a breach of her employment contract as the city was obligated to continue to pay her until her contract was properly terminated by the city council.

Following the filing of its answer, the city filed a section 425.16 special motion to strike the complaint, which was opposed by Gallant. After a hearing, the trial court (Hon. Marshall Whitley) denied the city's anti-SLAPP motion. The court explained:

of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

[4]     Labor Code section 1102.5, subdivision (c), reads, in pertinent part:  "An employer . . . shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation."

"Plaintiff's claims arise from the City of Alameda's termination of her employment contract rather than any petitioning or free speech activity protected by the anti-SLAPP statute. Because the Court finds that the complaint does not arise from protected activity within the meaning of [section] 425.16, the Court need not reach the issue of whether plaintiff has made a sufficient showing on the merits of her claims."

On the city's appeal, we found that the city council's alleged "termination" of Gallant's employment, which was the overarching premise of all of the causes of action, was protected conduct within the meaning of the anti-SLAPP statute. (*Gallant v. City of Alameda* (A133777, June 20, 2013) [nonpub. opn.] at pp. 5-7 (*Gallant I*).) We remanded the matter to the trial court to rule on the city's outstanding objections to Gallant's evidence and to determine in the first instance whether Gallant had met her burden of demonstrating a probability of prevailing on the merits of her complaint. (*Gallant I, supra*, at pp. 7-8.)

On remand, the trial court (Hon. John M. True, III) ruled on the city's outstanding written objections to Gallant's evidentiary submissions. Following further consideration of the parties' written submissions and argument by counsel, the court granted the city's "renewed" anti-SLAPP motion and dismissed the complaint, ruling that Gallant had failed to demonstrate a probability of prevailing on any of her causes of actions. Gallant timely appeals from the order granting the city's anti-SLAPP motion and the judgment dismissing her complaint.

## DISCUSSION

"A motion pursuant to section 425.16 requires a two-step analysis. First, the [trial] court must decide whether the defendant has made a threshold showing that the challenged causes of action arise from a protected activity. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 [124 Cal.Rptr.2d 530, 52 P.3d 703] [(*Navellier*)].) A defendant meets this burden by showing the acts alleged in plaintiff's causes of action fit into one of the categories stated in section 425.16, subdivision (e). (*Navellier, supra*, at p. 88.) If the

3

court determines the defendant has made such a showing, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim. (*Ibid.*) [¶] . . . [¶] Our review is de novo on both prongs of the anti-SLAPP statute." (*Lee v. Fick* (2005) 135 Cal.App.4th 89, 95-96.)

As noted, in our prior appeal we determine that the city had met its burden under the first prong of the section 425.16 analysis by showing that Gallant's complaint arose from protected activity within the meaning of the anti-SLAPP statute. (*Gallant I, supra*, at pp. 5-7.) On this appeal, we are asked to determine whether Gallant has met her burden under the second prong of the section 425.16 analysis. Based on our independent review of the record, and as we now discuss, we conclude the trial court properly granted the city's "renewed" anti-SLAPP motion as Gallant failed to meet her burden of showing a probability of prevailing on any of her causes of action as alleged in her complaint.

A.     **Gallant's Claims Against the City**

All of Gallant's claims against the city are based on the following pertinent circumstances. Pursuant to the city charter, the city council has the discretion to appoint and remove the city manager. (City of Alameda, Charter, § 2-2.[5]) On April 1, 2009, after the city's permanent city manager resigned, the city council, pursuant to its powers under the city charter over the method and manner of appointment and term of the city

---

[5]     Section 2-2 of the city charter reads: "(A) The following offices are hereby established and the incumbents thereof shall be appointed and removed by a vote of a majority of the full Council: City Manager, City Attorney, City Clerk. [¶] (B) During a period of ninety days immediately following the date of installation of any person newly elected to the Council at a regular or special municipal election or of any person newly appointed to the Council, the Council shall take no action, whether immediate or prospective, to remove, suspend, request the resignation of, or reduce the salary of, the incumbents in the aforementioned appointive offices." The city charter also grants the city council the authority to establish and abolish offices and positions of employment and fix the compensation and duties thereto, and to designate the person to perform the duties of city manager in the event of his or her absence or disability. (City of Alameda, Charter, § 3-7, paragraphs (G) and (H).)

manager, created an interim 24-month temporary city manager position for which it hired Gallant. At the time the city council created the position of interim city manager, the city was then operating with a multi-million dollar deficit, and required the services of an interim city manager to guide it through "this period of economic challenge," "to preserve core services and achieve a more efficient, effective and financially sustainable City government."

Gallant's employment contract contained provisions concerning the term of her employment and her separation during the term of her employment. Paragraph 2, titled "TERM," reads: "Interim City Manager shall be hired as a limited term employee for a minimum period of twenty four (24) months, commencing April 1, 2009 and ending March 31, 2011, unless extended by mutual agreement. Such extensions shall be in 90 day increments, at the commencement of which the City Council shall initiate its selection and recruitment procedure for the appointment of a permanent City Manager. [¶] Should the City Council elect to delay its executive search for a City Manager, or elect not to select a candidate at the term of this agreement, this agreement shall automatically renew in 90 day increments as provided herein until such time as the City Council has selected a permanent City Manager or until such time as the City provides the Interim City Manager with timely notice of non-renewal. The City Council shall provide the Interim City Manager with written notice of non-renewal at least 90 days prior to the initial Termination Date or any succeeding Termination Date." Paragraph 5, titled, SEPARATION, reads: "A. *Resignation* [¶] The Interim City Manager may resign at any time with 90 days advance written notice of the effective date of the resignation. [¶] B. *Termination and Removal* [¶] 1. Interim City Manager is an at-will employee serving at the pleasure of the City Council under the authority of Charter Section 2-2(A). [¶] 2. The City Council may remove the Interim City Manager at any time, with or without cause, by a majority vote of its members. Notice of contract termination shall be provided to the Interim City Manager with 90 days advance notice to ensure a successful

5

transition to either a subsequent Interim or permanent City Manager. The Interim [C]ity Manager shall remain on payroll for the 90 day period and receive full pay and benefits. [¶] 3. Failure to provide a 90-day advance notice in writing will require a 90-day payment-in-lieu-of notice. [¶] C. *Involuntary Resignation* [¶] 1. 'Involuntary resignation' as used in this Section means Interim City Manager's discharge or dismissal by the City, or her resignation following a request by the City Council, approved by a majority vote of the entire City Council, that she resign. The termination and removal provisions of Section 5 B (2) and 5 B (3) apply to an 'involuntary resignation.' [¶] 2. Involuntary resignation does not include Interim City Manager's death, incapacity due to injury or illness (physical or mental), dismissal for willful misconduct, malfeasance, dishonesty for personal gain, or following conviction of a felony, or misdemeanor affecting her ability to be covered under a fidelity bond, nor Interim City Manager's resignation for any reason other than so stated in this Section. [¶] D. *Separation for Cause* [¶] 1. Notwithstanding the provisions of Section 6. D, the Interim City Manager may be terminated for cause. As used in this section, 'cause' shall mean only one or more of the following: [¶] (a) Conviction of a felony, or a misdemeanor affecting her ability to be covered under a fidelity bond. [¶] (b) Abuse of drugs or alcohol that materially affect the performance of the City Manager's duties; or [¶] (c) Repeated and protracted unexcused absences from Interim City Manager's office and duties. [¶] 2. In the event the City terminates the Interim City Manager for cause, then the City may terminate this Agreement immediately, and the Interim City Manager shall be entitled to only the compensation accrued up to the date of termination, and such other termination benefits and payments as may be required by law."

In November 2010, the citizens of Alameda elected a new mayor and city council, including a first-time elected council member. The city officers were sworn in on December 21, 2010. On December 28, 2010, the city council resolved to recruit a permanent city manager and voted to give Gallant notice that her contract would not be

6

renewed. On that same day, the city council voted to place Gallant on paid administrative leave for the remaining three months of her term as interim city manager. Gallant was sent written notice of the non-renewal of her contract and her placement on paid administrative leave until the expiration of her contract by a letter dated December 29, 2010, and signed by the mayor.[6] On January 4, 2011, the city council initiated the process of recruitment and selection of a permanent city manager. Gallant did not apply for the permanent city manager position, and ultimately, another person was selected and appointed, assuming duties as the permanent city manager in June 2011.

---

[6] The letter read as follows:

"I write to notify you that the City Council on December 28, 2010 voted not to renew your limited term contract as Interim City Manager following the termination of your contract on March 31, 2011. This letter is formal written notice of this decision, and provided more than ninety (90) days in advance of March 31, 2011 as required by your contract.

"On behalf of the City Council and City of Alameda, I want to thank you for your service as interim City Manager. Should you wish to communicate a positive farewell message to all City of Alameda employees through the City's electronic mail system, please let me know and I am sure we can collaborate on an appropriate and mutually agreeable text.

"Effective immediately, and through expiration of your contract on March 31, 2011, you are placed on paid administrative leave. During the time that you are on paid administrative leave, you will continue to receive the pay and any and all benefits to which you are due under your contract with the City of Alameda. You also shall be required, if and when needed, to respond to inquiries by the Acting City Manager should the City need information regarding City matters.

"You are directed to immediately contact Karen Willis, Human Resources Director, to arrange for the return of any and all City of Alameda property that is in your possession and/or control, including but not limited to building and facility keys. Of course, all business files, documents and other records whether they are hard copy or digital, are the property of the City of Alameda, and should be returned to City Hall and/or may not be removed or altered in any way. You also are requested to make prompt arrangements with Karen for a convenient time to remove any personal items you may have at City Hall.

"Thank you again for your service to the City of Alameda. I wish you well in your future endeavors."

**B.      Analysis**

Gallant argues she has demonstrated a probability of prevailing on all her causes of actions against the city, because she has shown that the city council wrongfully terminated her in violation of both her employment contract and section 2-2 of the city charter.  In so arguing, she asks us to consider that at the time of the city council's vote on December 28, 2010, the special notice agenda item 3-C, titled "PUBLIC EMPLOYEE DISCIPLINE/DISMISSAL/RELEASE," related to her employment, and that there was both a resolution not to renew her contract after its initial termination date of March 31, 2011, and a decision to place her on paid administrative leave for the remainder of her contract.  She posits that if the city intended simply to terminate her employment by not renewing her employment contract, under section 2 of the contract, she "would not have been placed on administrative leave and prevented from returning to work for the duration of the contract term – she would have been given 90 days to see out her contract and at the end of that period her contract would have simply expired."  Based on this supposition, Gallant then argues that the city council's action of placing her on paid administrative leave until the expiration of her contract was a "retaliatory step," that brought its conduct within the purview of section 5 (B)(2), not section 2, of the employment contract, "because forcing [her] out until her contract expired necessarily constituted *removing* her from her role as Interim City Manager."  We conclude Gallant's arguments fail.

Gallant's employment contract explicitly provided various methods of terminating her employment: (1) under section 2, employment could be terminated by the expiration of the contract on March 31, 2011, referred to as the initial termination date, to be triggered by a 90-day notice of non-renewal by the city, [7] or (2) under section 5,

---

[7]      We recognize that section 2 also provided for the renewal of the contract past the initial termination date of March 31, 2011.  However, we see no reason to further address

8

employment could be terminated by either voluntary resignation, removal, involuntary resignation, or separation for cause. The city council's vote on December 28, 2010, as reflected in its letter to Gallant, evidences that the city was acting pursuant to its contractual right under section 2 of the employment contract. (See, also, Lab. Code, § 2920, subd. (a) [under a fixed-term employment contract, the "employment is terminated by . . . [e]xpiration of its appointed term"].) During the period from December 28, 2010 to March 31, 2011, Gallant remained in the employ of the city, received her full pay and benefits, and, was required, "if and when needed, to respond to inquiries by the Acting City Manager should the City need information regarding City matters." Consequently, we conclude Gallant has failed to make a prima facie showing that the city council took "actions far past the scope of a mere 'non-renewal' of her contract," and in effect, either wrongfully removed her under section 5 (B)(2) of the employment contract, and/or wrongfully removed or suspended her, pursuant to section 2-2(B) of the city charter (assuming her employment was covered under section 2-2 of the city charter, an issue we do not now decide). [8]

In sum, we conclude Gallant has failed to meet her burden under the second step of the section 425.16 analysis. Specifically, she has not demonstrated a prima facie

that provision because the city chose not to renew the contract past the initial termination date of March 31, 2011.

[8]     We are not persuaded by Gallant's reliance on *George v. California Unemployment Ins. Appeals Bd.* (2009) 179 Cal.App.4th 1475, 1480-1482 (employee claim that disciplinary suspensions were retaliation for filing complaint with the Department of Fair Employment and Housing), and *Stokes v. Dole Nut Co.* (1995) 41 Cal.App.4th 285, 293, 294 (employees' claim that mere preparation to compete with employer, whether or not disclosed, cannot be cause for termination of employment contract). They are factually inapposite to this case, and, in all events, do not support Gallant's argument that the city council's December 2010 action of non-renewal of her contract and her placement on paid administrative leave until the expiration of her contract constituted prima facie evidence of adverse employment actions necessary to support her causes of action under the Labor Code.

showing of a wrongful termination or other breach of her employment contract and a violation of section 2-2 of the city charter, elements necessary to prevail on all her claims against the city as alleged in her complaint.[9] Accordingly, we uphold the trial court's grant of the city's "renewed" anti-SLAPP motion and the judgment dismissing the complaint.

## DISPOSITION

The order and judgment filed February 14, 2014, is affirmed. The City of Alameda is awarded costs on appeal.

_____
Jenkins, J.

We concur:

_____
McGuiness, P. J.

_____
Siggins, J.

---

[9] In light of our determination, we do not address Gallant's other contentions.