Filed 3/24/23  Mountaingate Open Space Maintenance Assn. v. Monteverdi CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MOUNTAINGATE OPEN SPACE MAINTENANCE ASSOCIATION et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> MONTEVERDI, LLC, et al., <br><br> Defendants and Appellants. | B308496 <br><br> (Los Angeles County Super. Ct. No. 19STCV33839) |

APPEAL from an order of the Superior Court of Los Angeles County.  Rupert A. Byrdsong, Judge.  Affirmed

Gibson, Dunn & Crutcher, James P. Fogelman, Kahn Scolnick, Shannon Mader and Katarzyna Ryzewska for Defendants and Appellants.

Loeb & Loeb, William M. Brody and William N. Grosswendt for Plaintiffs and Respondents.

_____

This lawsuit pits the residents of an upscale community against the developers of a private nonresidential facility to be constructed on undeveloped land adjacent to the community. The residents filed suit stemming from claims that the proposed facility fails to comply with a prior agreement limiting future construction on the undeveloped land to new community homes. The trial court denied the developers' special motion to strike the entire lawsuit because their alleged misconduct is not protected by the anti-SLAPP statute (Code Civ. Proc., § 425.16[1]). We agree and affirm the order.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

Mountaingate is a master-planned luxury community in the Santa Monica Mountains of Brentwood. It is located next to hundreds of acres of undeveloped land (Property). In 1998, the city of Los Angeles (City) rejected a proposal by homebuilder Castle & Cooke California, Inc. (Castle & Cooke) to expand Mountaingate by constructing 117 new homes on the Property. In 1998, Castle & Cooke sued the City. In 1999, the Mountaingate Open Space Maintenance Association (MOSMA[2]) intervened in the lawsuit and negotiated a memorandum of understanding (MOU) with Castle & Cooke. The MOU limited to 29 the number of new Mountaingate homes to be constructed on the Property (Reduced Density Plan). Castle & Cooke dismissed its lawsuit. The City approved the Reduced Density Plan, but home construction was put on hold.

In 2014, Castle & Cooke sold part of the Property to Monteverdi, LLC (Monteverdi), a subsidiary of the Berggruen Institute (Berggruen).[3] Monteverdi's purchase includes most, if not all of the

---

[1] Statutory references are to the Code of Civil Procedure.

[2] MOSMA oversees and manages Mountaingate's common areas and open space on behalf of the residents.

[3] The Berggruen Institute is a self-described "multi-disciplinary, multi-cultural scholarly institute, which develops ideas to reshape

home lots specified in the Reduced Density Plan. Castle & Cooke, through its own subsidiary, C&C Mountaingate, Inc., retained the remainder of the Property but reserved for Monteverdi an option to purchase.

The same year, Berggruen approached MOSMA with its plan to develop a large, private nonresidential facility (Berggruen Project)[4] on the Monteverdi land. MOSMA opposed the plan as violating the MOU. Further discussions did not yield a consensus.

In June 2019, Monteverdi and C&C Mountaingate, Inc., received the City's approval for the "Final Map" reflecting the 29 home lots of the Reduced Density Plan. The City approved the Final Map, and it was recorded.

Berggruen and Monteverdi then announced they did not intend to follow the Reduced Density Plan and would instead develop the Berggruen Project.

On July 31, or August 1, 2019, Berggruen and Monteverdi filed an Environmental Assessment Form (EAF)[5] and related documents with the City requesting approval to develop the 25.4 acres designated for the home lots under the Reduced Density Plan along with the 223,880 square-foot Berggruen Project.

---

political and social institutions in the face of a changing social and political landscape." It was founded by Nicholas Berggruen.

[4] Defendants refer to this facility as "the Scholars' Campus." Because there is an issue as to the nature of these facility, we refer to it as the Berggruen Project.

[5] The filing of an EAF or Environmental Assessment Form triggers the City's mandatory environmental review of proposed construction under the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.). (*Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova* (2007) 40 Cal.4th 412, 442; see, e.g., *A Local & Regional Monitor v. City of Los Angeles* (1993) 16 Cal.App.4th 630, 636.)

## II. Procedural Background

MOSMA and Crest/Promontory Common Area Association[6] (collectively plaintiffs) sued Monteverdi, Berggruen, and Castle & Cooke (collectively defendants). In the operative first amended complaint, plaintiffs assert seven causes of action: The first and second causes of action are for declaratory relief, in which plaintiffs seek a judicial determination that the MOU is binding on defendants and limits construction on the disputed undeveloped acres to the Restricted Density Plan. The third and fourth causes of action allege a breach of the terms of the MOU and, alternatively, a breach of the covenant of good faith and fair dealing. The fifth cause of action is for intentional interference with contract. The sixth cause of action is for unjust enrichment. The seventh cause of action is for declaratory relief, in which plaintiffs seek a judicial determination that defendants do not have an ingress or egress easement over Stoney Hill Road, a private Mountaingate street.

Defendants filed a special motion to strike plaintiffs' entire amended complaint, arguing "the causes of action" are "a direct response" to defendants' filing of the EAF, which initiates the City's environmental review. As such, defendants argued, the EAF falls within the scope of section 425.16, subdivision (e)(1), which protects "any written or oral statement or writing made before a legislative [or] executive . . . proceeding, or any other official proceeding authorized by law," and subdivision (e)(2), which protects "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative [or] executive . . . body, or any other official proceeding authorized by law." Defendants also argued plaintiffs' claims are meritless for several reasons, among them, that the MOU is neither binding on defendants nor creates a permanent restriction on developing the Property.

---

[6] Crest/Promontory Common Area Association is responsible, on behalf of Mountaingate residents, for the oversight and management of Stoney Hill Road and other private streets in Mountaingate.

Plaintiffs opposed the motion, and defendants filed a reply. Both parties filed declarations and objections to one another's evidence.[7]

At the conclusion of a hearing, the trial court denied defendants' anti-SLAPP motion. The court found plaintiffs are "really asserting [their] rights under the MOU," not "attacking" the "petitioning activity" of the EAF submission. Defendants timely appealed.

## DISCUSSION

### I.     Anti-SLAPP Statute and Standard of Review

"A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) "The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.)

"Litigation of an anti-SLAPP motion involves a two-step process. First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit." ' [Citation.] If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.)

On appeal, we apply the same two-step process in reviewing de novo the trial court's ruling on an anti-SLAPP motion. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.) However, as we discuss, this is a first-step anti-SLAPP case

_____

[7] The trial court's evidentiary rulings are not included in the record on appeal.

5

because we agree with the trial court that none of plaintiffs' claims arise from protected activity. We therefore need not consider the second step. (See *Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1393.)

## II. Defendants Failed to Show Protected Activity

In the first amended complaint the causes of action rest on the following allegations: (1) defendants are bound by the MOU either as a party or as successors and/or assignees to adhere to the Reduced Density Plan for the development and use of the adjacent undeveloped land; (2) "despite the City's approval of the Final Map for the Reduced Density Plan," defendants "announced they do not desire or intend to develop the Reduced Density Plan and plan to pursue other, nonresidential, and much more intensive development" of the land; (3) defendants filed an EAF and related documents with the City indicating defendants are "now seeking rights to develop the 25.4 acres designated for the homes under the Reduced Density Plan with approximately 223,880 square feet of facilities" for the Berggruen Project; (4) defendants' EAF and related documents "concede" the proposed Berggruen Project "exceeds the City's Hillside Development Standards"; (5) defendants' documents falsely portray the proposed Berggruen Project under the Zoning Code as an "educational institution," which may allow it to be located in a residential area; (6) "[t]o avoid the City planning and zoning restrictions that would prohibit the development and operation of the [Berggruen Project]" on the undeveloped land, defendants have "hosted elected representatives at lavish parties, made political contributions, and engage public officials . . . to lobby public officials to approve" the Berggruen Project; and (7) defendants are not entitled to use Stoney Road, but nonetheless have claimed in the Final Map and EAF that they have an ingress and egress easement over the street, which is not required by the MOU for the Berggruen Project.

On appeal, defendants seek to strike the allegations concerning the filing of the EAF and related documents as well as the lobbying of

public officials, arguing they are protected activity under the anti-SLAPP statute and supply the basis for all of plaintiffs' claims.

In response, plaintiffs do not dispute that initiating the City's environmental review is protected activity. They do not address whether lobbying public officials is protected activity, but it certainly constitutes "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest" within the meaning of section 425.16, subdivision (e)(4).

As set forth above, the first amended complaint contains allegations of both protected and unprotected activity. The question before us then is whether any of plaintiffs' claims arise from the protected activity and must therefore be stricken. "A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park v. Board of Trustees of California State University, supra*, 2 Cal.5th at p. 1062.) "Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.' " (*Id.* at p. 1063.) On the other hand, "where a plaintiff's claim is based upon 'an action or decision' of the defendant, it is not enough that some protected activity by the defendant *precedes* that action or decision, that some protected activity *is the means of communicating* that action or decision, or that some protected activity *constitutes evidence of* that action or decision." (*Mission Beverage Co. v. Pabst Brewing Co., LLC* (2017) 15 Cal.App.5th 686, 700–701, citing *Park*, at pp. 1060–1061.) Accordingly, where protected activity does not form the basis of a claim, but instead serves as evidence in support of the claim, it does not come within the ambit of section 425.16. (*Park,* at pp. 1060, 1064.)

The first amended complaint does not arise from protected activity. Plaintiffs' four contract-related claims and two of their declaratory relief claims challenge defendants' repudiation and anticipatory breach of the MOU. These claims arise from defendants' conduct of refusing to be bound by the MOU's Reduced Density Plan and their decision to develop the Berggruen Project on the Property.

The third claim for declaratory relief challenges defendants' right to use Stoney Hill Road for the Berggruen Project.  This claim arises from defendants' asserted entitlement to an ingress and egress easement over Stoney Hill Road.  Filing the EAF and lobbying City officials do not form the basis of any of plaintiffs' claims.  To the extent these protected activities are referred to in some claims, they merely serve as evidence in support of the claims.  For example, in *Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388, the plaintiff sued the insurer for the alleged mishandling of claims.  The insurer filed an anti-SLAPP motion asserting the plaintiff's suit was based on confidential written reports that the insurer had submitted to the department of insurance.  (*Id.* at pp. 1391–1393.)  Reversing the trial court, the Court of Appeal held the insurer's contention "confuses [the insurer's] allegedly *wrongful acts* with the *evidence* that [the] plaintiff will need to prove such misconduct."  (*Id.* at p. 1399.)  The plaintiff "seeks no relief from [the insurer] for its communicative acts, but rather for its alleged mistreatment of policyholders and its related violations and evasions of statutory and regulatory mandates."  (*Ibid.*) The court noted the department of insurance report may have " 'triggered' " the plaintiff's suit, but the suit did not arise from the report nor from any related communication by the insured to the department of insurance.  (*Ibid.*)

*Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207 is also instructive.  In that case, the plaintiff corporation, whose government contract with the city for bus stop maintenance had ended, sued the city for awarding a new contract to a business rival without competitive bidding.  (*Id.* at pp. 1212–1213.) The city filed an anti-SLAPP motion, arguing the claims against it were protected activity as based on its communications with plaintiff, the business rival, and the public.  (*Id.* at p. 1213.)  Reversing the trial court, the Court of Appeal held while the city's communications preceding its decision were helpful in establishing what events led up to the termination of the plaintiff's contract, the claims were not based on them, but on the award of a new contract purportedly in violation of

8

laws governing competitive bidding. (*Id.* at p. 1215.) "The communications assist[ed] in telling the story." (*Ibid.*)

Defendants respond with three arguments to shore up their position that "but for" their protected activity, plaintiffs' claims would have no basis. First, defendants repeatedly argue the only "affirmative acts" alleged in the first amended complaint are defendants' filing of the EAF and related documents and lobbying of public officials. This argument ignores the allegations of defendants' conduct—which we have set forth—that is not protected activity under section 425.16 and gives rise to plaintiffs' claims.

Second, defendants point to correspondence accompanying their anti-SLAPP motion, which they contend confirms that their protected activity is the root of plaintiffs' claims. In a letter dated a month before the commencement of this suit, MOSMA's counsel wrote to defendants' counsel that "MOSMA is informed that on July 31, 2019, Monteverdi filed applications to develop the Property with a project other than the Reduced Density Plan, which action constitutes a breach of the Agreement." We read this letter as advising defendants that the planned development of the Property, not the filing of the EAF, is the breach of the MOU. The letter also suggests the filing of the EAF triggered the suit against defendants. We note plaintiffs' declarations attached to their opposition demonstrate the parties' dispute arose before the filing of the EAF. Both MOSMA's president and counsel averred that during a July 23, 2019 meeting, defendants said they were not bound by the MOU, would not adhere to it, and planned to construct the Berggruen Project. MOSMA's president and counsel responded that all parties were expected to comply with the MOU and Reduced Density Plan, and they opposed the development of the Berggruen Project. Defendants indicated they would build the Project over plaintiffs' objections.

Third, defendants rely on *Navellier v. Sletten* (2002) 29 Cal.4th 82 (*Navellier*) to buttress their "but for" argument. *Navellier*, however, is a very different case. It concerned activity on the part of a defendant that is entirely different from the activity at issue here. In *Navellier*,

9

the parties entered into a release of claims in the course of a federal lawsuit. (*Id*. at p. 86.) However, the release did not settle the entire lawsuit. While the federal lawsuit was still pending, the defendant filed counterclaims against the plaintiffs. (*Ibid*.) In response, the plaintiffs sued the defendant in state court and alleged: (1) the defendant breached the release by filing counterclaims in federal court, and (2) the defendant committed fraud in misrepresenting his intention to be bound by the release and causing the plaintiffs to incur litigation costs in the federal lawsuit they would not otherwise have incurred. (*Navellier*, at p. 87.)

The California Supreme Court held the defendant satisfied the first step of the section 425.16 analysis. The defendant was being sued based on allegations that he had committed fraud in misrepresenting his intention to be bound by the release, and that he had committed breach of contract by filing counterclaims in the federal action. "In fact, but for the federal lawsuit and [the defendant's] alleged actions taken in connection with that litigation, plaintiffs' present claims would have no basis." (*Navellier, supra,* 29 Cal.4th at p. 90.)

Defendants also argue that the trial court erroneously applied the "gravamen test" or "principal thrust test," which, they assert, has been recently "repudiated" by our Supreme Court in *Bonni v. St. Joseph Health System*, *supra*, 11 Cal.5th 995. But defendants have misread that decision. The court in *Bonni* affirmed the use of the gravamen test for the very purpose used here—to determine "whether particular acts alleged within the cause of action supply the elements of a claim [citation] or instead are incidental background [citations]. This approach is consistent with *Baral* [*v. Schnitt, supra,* 1 Cal.5th at p. 394], which reaffirmed that '[a]ssertions that are "merely incidental" or "collateral" are not subject to section 425.16. [Citations.] Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute.' " (*Bonni v. St. Joseph Health System, supra,* at p. 1012.)

As discussed, the protected activity urged by defendants in this case is not the wrongful acts that give rise to plaintiffs' claims. In sum,

this is not a SLAPP lawsuit.  The trial court properly denied defendants' special motion to strike.

## DISPOSITION

The order denying the special motion to strike is affirmed. Respondents are entitled to recover their costs on appeal.

LUI, P. J.

We concur:

CHAVEZ, J.

HOFFSTADT, J.

11